IN THE

# SUPREME COURT OF JUDICATURE

OF THE

## STATE OF NEW-YORK,

SINCE 5th JUNE, 1834.

---

THE PEOPLE, ex rel. R. Muir, *vs.* G. B. THROOP, cashier of the Cayuga County Bank.

A board of *directors* of a bank have no right to pass a resolution excluding one of its members from an inspection of its books, although they believe him to be hostile to the interest of the institution; and it was accordingly held in this case, where the *cashier* of a bank had refused to permit a director to inspect the *discount book*, that a *mandamus* lay, commanding the cashier to submit the book to his inspection, although the conduct of the cashier had been approved by a resolution of the board.

*It was also held* that the *mandamus* might properly be directed to the *cashier*, and need not be directed to the *board;* the court, however, intimating that as notice had been given to the directors, there would be no impropriety in directing the writ to them as well as to the cashier.

Where a *rule to show cause* has been obtained, and cause is shown, but not satisfactory, a *peremptory mandamus* will be granted in the first instance, and the relator not subjected to the delay of an alternative; in such case, however, the party against whom the proceeding is had will be permitted to make up a record *pro forma*, for the purpose of suing out a writ of error.

On a party appearing to show cause why a mandamus should not issue, the *relator* holds the affirmative—*note.*

MOTION for a mandamus. The relator, on an affidavit that       June 5.
he was one of the *directors* of the Cayuga County Bank, and that the *cashier* of that institution had refused to permit him to inspect and examine he *discount book* of the bank, obtained a rule that the cashier submit the book to his inspection, or show cause why a *mandamus* should not issue. The cashier

ALBANY,
June, 1834.

The People
v.
Throop.

showed cause; his own affidavit and the affidavits of *six* of the *directors* were produced and read. The following facts appeared: The bank commenced business about the 20th day of *August* last. The board of directors consists of the number of thirteen, of whom the cashier is one. The relator holds stock to the amount of $500, and is one of the directors, and attended the meetings of the board until *October* last; since when he has not attended. On the first Tuesday of *February*, he demanded of the cashier an inspection of the discount book of the bank; with which demand the cashier refused to comply, and after such refusal, the board of directors passed a resolution approbating the conduct of the cashier, and directing him and the clerks of the bank not to permit the relator to inspect the discount book. The directors state that they consider the relator hostile to the institution; that they are informed and believe that he has circulated reports unfavorable to it; that he has declared to one of their number, that the bank had done no good business, that the stock had been paid in by illegal and fictitious certificates of deposit, and that the affairs of the bank were badly managed. They state further, that the relator is a merchant in extensive business, and has been engaged in collecting the bills of the bank, to enable the *Auburn Bank* (a rival institution) to return them to the *Cayuga County Bank;* and that from the conduct and declarations of the relator, they believe that his object, in desiring an inspection of the books of the bank, is not for any good or proper end, but probably for the purpose of enabling him to make mischievous and injurious representations. The case was heard at a former special term, when it was fully argued.

*M. T. Reynolds,* for the relator.

*J. Edwards & S. Stevens,* contra.*

---

*Upon the coming on of the motion, a question arose as to which party held the *affirmative,* the relator of the party showing cause. The chief justice said that the relator of course held the affirmative; he had obtained a rule for the opposite party to show cause why the mandamus should not issue, on cause being shown, he would move for a mandamus, and after the opposite party had been heard in opposition to the motion, the counsel of the relator would be at liberty to reply.

*By the court*, SAVAGE, Ch. J. It must be conceded that if the relator has a right to the inspection of the books of the bank, a *mandamus* is the appropriate and the only remedy at law. The cases cited by counsel show that in case of removal or suspension from corporate rights, a *mandamus* is the proper remedy. No action at law lies in such a case, under its present circumstances ; whether an action might not be maintained in case actual individual damage should be the consequence of the conduct of the defendant and his co-directors is a question not presented ; and if such an action would lie, that would be no objection to a *mandamus* in the present state of the case. If there is a right on the part of the relator to examine the books, either with reference to his own safety or with a view to the proper execution of the trust reposed in him by the stockholders, then this is the remedy, and the only remedy in a court of law. The question then seems to be this : Has every director of a bank a right to know the transactions of his co-directors in relation to the management of the institution ? The stating the question furnishes the answer. What right has the president, or any other director, to demand information as to the affairs of the institution, which the relator has not ? The thirteen directors were elected by the same stockholders, at the same election, to hold for the same term, clothed with the same powers, invested with the same trusts—each to exercise his best judgment in the management of the affairs of the company. Suppose a difference of opinion exists among the directors, a majority must control ; but if they are divided, say six against seven, is it competent for the majority to turn the minority out of the director's room, and refuse them any information of the business transactions of the bank ? Surely such an outrage could not be defended ; nor can I conceive of any plausible apology for it. The directors, thus virtually ejected from office, might be the principal stockholders in the bank, and the majority might have very little interest therein, or might be hostile to the best interests of the institution. These are possibilities, but have little or nothing to do with the question of right. Every director has an equal right in regard to this matter.

<div style="margin-right">

ALBANY,
June, 1834.

The People
v.
Throop.

</div>

The defendant and a majority of the directors state, as a reason for their conduct, that the relator found fault with their proceedings, and they were informed and believed that he was hostile to the interests of an institution in which he was a stockholder to the amount of $500, and a director. The other directors therefore made a by-law, excluding him from all knowledge of their business transactions; and it is contended that the statute gives them this power. The act of incorporation gives the directors power to make such by-laws as shall be needful touching the government of the corporation, the management of its business and property, and the duties and conduct of the officers, clerks and servants employed by them. This is a power which they would have possessed at the common law, had it not been conferred by the charter; it is a power incident to every corporation aggregate, and conferred by the act of creating such a corporation. But all by-laws, to be valid, must be reasonable—must be consistent with the laws of the state, and promotive of the interest of the corporation; they must not be unequal, oppressive, or vexatious. Whether by-laws are reasonable and consistent with law is a question solely for the court. 3 Pick. 462. Angel & Ames on Corp. ch. 9, p. 177 to 200. 10 Wendell, 100. 5 Cowen, 465. A by-law, to be entitled to the name, must be some regulation which operates upon all alike. The resolution entered by the directors is not entitled to the appellation of a by-law; it is a mere direction to the officers to exclude a director of the bank from the enjoyment of his rights. It is aimed at a single individual; not a general regulation affecting the directors at large or the stockholders.

The revised statutes have prescribed certain rules for the government of directors of monied corporations and have made the directors personally liable for a violation of those regulations in certain cases. 2 R. S. 589, 90, 91, 92, and p. 601, 602. Thus, in page 592, § 13, it is enacted, that every director not present at a meeting when certain violations shall happen, shall be deemed to have concurred therein, if the facts appear on the books of the company, and he shall remain a director for six months, and shall not require his

written dissent to be entered in the minutes of the directors. How can a director know what was done when he was not present, unless he can have access to the books which disclose what was done ? The statutes do not secure, in terms, to every director the right to examine the books ; but by the section last quoted, and those preceding it, he may be made liable civilly and criminally for the improper conduct of his co-directors, and unless he can have the means of knowing what has been done, he cannot avoid such liability. Whatever may have been the hostility manifested by the relator, the con duct of the board of directors and that of the cashier cannot be justified. What would be said of a legislative body who should refuse to a member the knowledge of its proceedings which occurred while he was absent, or a perusal of its journals ? This case is not entirely analogous, but it is sufficiently so to show the character of the high handed measure adopted by the board of directors.

The only question about which there can be any doubt is, whether the *mandamus* should be directed to the *cashier*, who is a ministerial officer, or to the board of directors, of which he is a constituent member. The rule is that the writ shall be directed to him who is to do the thing required to be done. The cashier is the person having the custody of the books in question ;. and though the officer of the directors, yet he has the particular charge of the books and papers of the institution, which are as much the books of the relator as of any other individual director ; and although the board approbated the conduct of the cashier, the refusal complained of was his individual act, and not in obedience to the resolution of the board, for the refusal preceded the resolution. It cannot, therefore, be improper to direct the writ to the cashier. Nor can I see any impropriety in directing it also to the directors. They have had notice of the application, and six of them have shown cause against it by their affidavits.

There can be no impropriety in granting a *peremptory writ* in the first instance. The rule to show cause has performed the office of an alternative writ. The same matter has now been presented to the court by affidavit, which would have come in the shape of a return to an alternative mandamus.

ALBANY,
June, 1834.

The People
v.
Throop.

ALBANY,
June, 1834.

A delay might render nugatory the whole proceeding as to the relator; and granting the peremptory writ in the first instance cannot prejudice the defendant or the directors as to a review of the decision of this court.   If it is desired, a record may be made up *pro forma,* and judgment rendered at the first term, so that the party defendant may bring his writ of error, if he be so advised.

A peremptory mandamus is ordered.