THE PEOPLE OF THE STATE OF ILLINOIS, *ex relatione* ROBERT C. BRISTOL, *v.* JOHN PEARSON, Judge of the Seventh Judicial Circuit of the State of Illinois.

*Application for a Writ of Mandamus.*

Where a judge of the Circuit Court refused to sign a bill of exceptions tendered to him upon the trial of a cause, but signed the bill of exceptions after amending it, by striking out a material portion of the bill, the Supreme Court granted a writ of *mandamus* to compel him to sign the bill of exceptions as originally presented to him

Where an alternative writ of *mandamus* was granted to a judge of the Circuit Court, to compel him to sign a bill of exceptions, and the writ was delivered to the judge, but not returned by him, the Supreme Court granted a peremptory writ, requiring him to sign the bill of exceptions.

Where a judge of an inferior court is of opinion, that a bill of exceptions, which he has been required, by an alternative writ of *mandamus*, to sign or show cause for not signing, is objectionable, or contains matter which was not excepted to, or the same is untruly or incorrectly stated in the bill, he should return the causes of his objections. The Supreme Court will not compel the signing of a bill which does not truly state the facts, as they occurred on the trial.

The signing, sealing, and approving of a bill of exceptions is a ministerial act, and the Supreme Court will compel, by writ of *mandamus*, a judge of a Circuit Court to sign and seal a bill of exceptions taken on the trial; but the judge must determine its accuracy, and whether it correctly recites the points made, and opinions excepted to; and if it correctly sets out the facts, he must sign it.

*Semble*, That the practice should be to reduce the exceptions to the opinion of the Court to writing during the progress of the trial, and have the bill of exceptions completed while the facts are fresh in the minds of the Court and parties.

*Semble*, That a party has a right to have all of the facts connected with the decision of the Court, which was excepted to, included in his bill of exceptions; and if the inferior court refuse to sign a bill of exceptions containing all of the facts, the Court will compel a compliance by *mandamus*.

*Semble*, That a Supreme Court will never compel an inferior court to do an act in regard to which the inferior court is vested with a judicial discretion.

AT the July term of this Court, in the year 1839, J. Young Scammon, attorney for Robert C. Bristol, filed the record of the cause of John F. Phillips *v.* Robert C. Bristol, which was tried in the Cook Circuit Court, at the May special term, 1839, and appealed to this Court. At the same time, he moved for a writ of *mandamus* against the judge who tried the cause, to compel him to sign a certain bill of exceptions which was tendered to him on the trial, and filed the following affidavit and notice, accompanied by the exhibits mentioned therein:

" State of Illinois, Supreme Court, July Term, A. D. 1839.

" J. Young Scammon doth solemnly, sincerely, and truly declare and affirm, that at the last May special term of the Cook Circuit Court, held at Chicago, in the county of Cook, and State of Illinois, his Honor, John Pearson, presiding as judge thereof, a suit was called wherein John F. Phillips was plaintiff, and Robert C. Bristol was defendant; a copy of the record and proceedings in

which suit, as they appear of record, are hereto annexed, marked
*A.* That this affiant was one of the attorneys and counsel for said
Bristol, and that, at the calling of said cause, the plaintiff, by his
counsel, filed his exceptions to portions of the deposition of John
Moore, a witness whose deposition had previously been taken, and
which was on file to be used as testimony on the trial of said cause
in said Court ; a copy of which deposition, marked *B,* — and of
said exceptions, marked *C,* — are hereto annexed and made a part
of this affidavit. That the judge aforesaid sustained said excep-
tions, and excluded the following portions of said Moore's deposi-
tion, to wit: ' In answer to the question put by defendant's coun-
sel, In whose name were the papers made out, as master of the
steamboat Madison, in 1838 ? the witness says, that they were
taken out in the name of John McFadgen : the above question
was objected to, and the answer taken subject to the opinion of the
Court. In answer to the question, In whose name were bills of
lading signed for goods shipped on board the boat during the
trip Mrs. Phillips came up ? the witness says, they were generally
signed by witness as clerk, and sometimes in the name of John
McFadgen, but recollects none signed in the name of Captain
Bristol ; still there may have been some thus signed,' — which
*were marked as excluded, in pencil, on said deposition,* and the
same were not read or given in evidence to the jury.

" To the opinion of the Court in excluding said portions of said
deposition, the said Bristol then and there, by his counsel, this affi-
ant, excepted.

" This affiant further states, that in the progress of said cause,
the defendant, by this affiant, as his counsel aforesaid, excepted to
the opinions of said Court in several other particulars, and embod-
ied the foregoing exceptions, together with all the exceptions taken
by him to the opinions and decisions of the Court, during the trial
of said cause, in a bill of exceptions, of which a true copy is hereto
annexed, marked *D,* and made a part of this affidavit ; and, before
the jury had retired from the bar of the Court, tendered the same
to said judge, with a request that he should sign and seal the same
in conformity with the law ; that the said judge replied, there was
no hurry about it, that it was all matter of record, and he would
sign the bill of exceptions if said Scammon had copied correctly
from the depositions the parts excepted to, and the receipt in said
bill of exceptions contained, signed by said Bristol. The said
judge took the bill of exceptions, and a few days afterwards asked
Isaac N. Arnold, Esquire, the counsel of said plaintiff, Phillips,
upon the trial of said cause, to examine the said bill of exceptions ;
that said Arnold did examine the same, as this affiant is informed
by him, and stated to the Court, the said judge, that he had com-
pared those portions of the deposition that were included in the bill
of exceptions, and excluded by the Court, and found them correct-

ly copied. That the judge then put the bill of exceptions in his pocket, as this affiant believes, and did not return it to this affiant till nearly a week after the time it was first tendered to him, and when it was returned to this affiant, it was in the shape, form, and words contained in a true copy hereto annexed, marked *E*; that this affiant then informed the Court, that said bill of exceptions, as signed, did not contain all the facts, and requested the said judge to amend it, so as to conform to the facts, by inserting in it all the words that were excluded from said deposition as aforesaid: which he wholly refused to do, unless the counsel for the plaintiff would consent to it. This affiant further saith, that said bill of exceptions, tendered as aforesaid, by this affiant, to his Honor, Judge Pearson, contained the facts just as they transpired on the trial of said cause, and nothing more; that the portions of said deposition which were excluded by said judge, were copied, word for word, and letter for letter, from said deposition, and that the bill of exceptions signed by said judge does not contain all the facts, but entirely omits, as this affiant believes, the most material part of said deposition which was excluded.

" J. Young Scammon.

" Duly affirmed to, according to law, before me, this 11th day of July, A. D. 1839.

" J. M. Duncan, *Clerk.*"

" John F. Phillips v. Robert C. Bristol.

" To Isaac N. Arnold, Esq., Attorney and Counsel for said John F. Phillips.

" Sir, — Please to take notice, that at the July term of the Supreme Court of the State of Illinois, to be holden at Springfield, in said State, on the second Monday of the month of July instant, I shall move said Court for a writ of *mandamus*, to be directed to John Pearson, judge of the Circuit Court of Cook county, in said State, commanding him to sign and seal the said bill of exceptions, a copy of which is hereto annexed, which were tendered to said judge on the trial of the cause in the said Circuit Court of Cook county, wherein said John F. Phillips was plaintiff, and Robert C. Bristol was defendant, by the said defendant's counsel, at the last May special term of said Court; which motion will be predicated upon the foregoing affidavit and the papers thereto annexed.

" Robert C. Bristol, *by*
J. Young Scammon, *his Att'y.*

" *July 3d,* 1839.

" I hereby acknowledge due service of the foregoing notice and papers, this 3d day of July, A. D. 1839.

" I. N. Arnold, *Att'y for*
John F. Phillips."

A copy of the bill of exceptions tendered to the judge, and referred to as exhibit *D*, is contained in the writ of *mandamus*. The

copy of the bill of exceptions signed by the judge, and referred to in the foregoing affidavit, as exhibit *E*, is as follows, the parts erased by the judge being printed in italics, and the interlineations made by him being included in brackets : (1)

"Cook Circuit Court, May Special Term, A. D. 1839.

ROBERT C. BRISTOL
          *ads.*              } *Assumpsit.*
JOHN F. PHILLIPS

"Be it remembered, that when this case was called for trial, the plaintiff filed his exceptions to the deposition of John Moore, which said exceptions are in the words and figures following : (Here insert them,) [' In whose name were the papers made out as master of the steam-boat Madison, in 1838 ? '] And upon motion of the plaintiff's counsel, the Court excluded the following portions of said Moore's deposition, to wit :

"' In answer to the question put by the defendant's counsel, In whose name were the papers made out as master of the steam-boat Madison, in 1838 ? *the witness says they were taken out in the name of John McFadgen :* ' the above question was objected to, and the answer taken subject to the opinion of the Court.'

"' In answer to the question, In whose name were bills of lading signed for goods shipped on board the boat during the trip Mrs. Phillips came up ? *witness says they were generally signed by witness, as clerk, and sometimes in the name of John McFadgen, but recollects none signed in the name of Capt. Bristol ; still there may have been some thus signed.*' To which opinion of the Court, in excluding such portions of said deposition, the defendant, by his counsel, then and there excepted. The defendant then offered in evidence the following paper, calling it the clearance papers of the James Madison : (Here insert it.) The plaintiff's counsel objected, and the objection was sustained. (See bill of exceptions copied into the writ of *mandamus*, page 197, for so much of this bill as is omitted here.)

"' Recd, Chicago, 25 May, 1838, from Kinzie & Hunter, three hundred $\frac{57}{100}$ dollars, being in full for chgs. on goods, per S. B. Madison, as noted on bills of lading.

"' $300,57.                              R. C. BRISTOL.'

"To the reading in evidence to the jury of said receipt, [after proving by the witness the handwriting of Bristol, and that it was the common book and practice to sign the receipts in this way, as captain,] the defendant objected, and the Court overruled the objection, and permitted the said receipt to be read to the jury, as evidence ; to which said opinions the defendant excepts severally, and prays the Court to sign and seal this his bill of exceptions, and make it a part of the record in this case, which is done.                         JOHN PEARSON, [SEAL.]"

(1) The exhibits are omitted by the Reporter.

J. Young Scammon, for the relator :

It was the duty of the judge of the Circuit Court to sign and seal the bill of exceptions tendered to him in this case. The statute is imperative. R. L. 491, § 19 ; Gale's Stat. 533. The remedy for his refusal is by *mandamus.*

" If either in his directions or decisions the judge mistakes the law by ignorance, inadvertence, or design, the counsel on either side may require him publicly to seal a bill of exceptions ; stating the point wherein he is supposed to err ; and this he is obliged to seal by statute Westminster 2, 13 Edward 1, c. 31 ; or if he refuses so to do, the party may have a compulsory writ against him, commanding him to seal it, if the fact alleged be truly stated." 3 Blac. Com. 372.

The Supreme Court has power to grant a writ of *mandamus.* Art. IV. of Const. Ill. § 2. This has been recognised by the Court in the case of Street *v.* The Co. Com. of Gallatin County, Breese 25.

A *mandamus* issues in general in all cases where the injured party has a right to have any thing done, and has no other specific means of compelling its performance. 6 Wheeler's Am. Com. Law 555 ; The People *v.* Brooklyn, 1 Wend. 318 ; 2 Wheat. Selwyn 1093, title *Mandamus,* and authorities there cited.

The power of issuing a *mandamus* to an inferior Court to compel it to sign and seal a bill of exceptions, is incident to supervising courts.

The authority of the Supreme Court of Ohio to issue a *mandamus,* commanding the judges of the Common Pleas to sign a bill of exceptions, cannot be doubted. State of Ohio *v.* Todd *et al.,* 4 Ham. 351.

A *mandamus* lies from the Supreme Court of New York to a Court of Common Pleas, to compel them to seal a bill of exceptions. The People *v.* The Judges of Washington, 1 Caines 511 ; The People *v.* Judges of Westchester, 2 Johns. Cas. 118 ; Coleman 135 ; Sikes *v.* Ransom, 6 Johns. 279.

It lies also to amend a bill of exceptions according to the truth of the case. Sikes *v.* Ransom, 6 Johns. 279.

*Mandamus* lies to the Circuit judge to seal a bill of exceptions. Delavan *v.* Bordman, 5 Wend. 132 ; *Ex parte* Robson, Walker 412 ; *Ex parte* Cranes, 5 Peters 190.

But a peremptory *mandamus* to a Court of Common Pleas is not granted in the first instance, but an alternative *mandamus,* or rule to show cause. The People *v.* Judges of Cayuga, 2 Johns. 68 ; The People *v.* Judges of Washington, 1 Caines 511.

The judge in this case declared, that he would sign no bill of exceptions containing the evidence. He might as well, in most cases, refuse to sign any bill of exceptions, as to refuse to sign one containing the evidence. In very many cases it is impossible

for the Supreme Court to determine whether the decision of the Court below was erroneous, without having the facts. And where a portion of a deposition is excluded, all of the excluded portions of the deposition should be set out in the bill of exceptions, to enable this Court to judge whether the party excepting has been injured by the decision complained of.

The decision of an inferior Court may be incorrect in point of abstract law, when yet it may not be ground of error in the case in which it is made.

The whole of the evidence, whether oral or written, on which the allegation of error depends, ought to be set forth. 5 Dow 225 ; 2 Dunl. Pract. 643.

The following authorities are cited to show that it is not only necessary but indispensable to incorporate evidence in a bill of exceptions.

It does not follow as a necessary consequence to the asking of a question, that the answer will be in the affirmative ; and unless the answer constitutes illegal testimony for the party calling a witness, it is no ground of exception. The province of a bill of exceptions taken in the progress of a trial, is to show that improper testimony has been received, or proper testimony rejected.

Where an exception is taken to a question asked a witness on the trial of a cause, if the answer of the witness is not given in the bill of exceptions, the Supreme Court cannot know that the Circuit Court received improper testimony. Miller v. Houcke et al., 1 Scam. 501.

An exception to the opinion of the Court must show its relevancy to the case. Brown v. McConnel, 1 Bibb 266 ; Beauchamp v. Tennel, Ibid. 442.

A party excepting should spread the whole evidence touching the point decided, on the record ; if he fail to do so, every intendment will be indulged in favor of the judgment. Hodges v. Biggs, 2 Marsh. 222 ; Taylor v. Mayo, Ibid. 251 ; Payne v. Bettisworth, Ibid. 428 ; Shryock v. Morton, Ibid. 563. See also Blue v. Kibby, 1 Monroe 196.

A bill of exceptions to the decisions of the Court on a plea of nul tiel record, must show the evidence on the trial, otherwise the Court of Appeals will not disturb the decisions of the inferior Court. Fowler v. Commonwealth, 4 Monroe 129.

A bill of exceptions taken to the opinion of the Court in giving instructions, will not be ground of reversal, unless it appear from the evidence incorporated in the record, or from the pleadings, that the party has been prejudiced thereby. Harrisons v. Baker, 1 J. J. Marsh. 318 ; Beauchamp v. Morris, 1 Marsh. 521.

See an application of the same principle, to a case where incompetent testimony was admitted. Hodges v. Crutcher, 1 J. J. Marsh. 504.

The bill must explicitly state the facts necessary to show the

error. Keath *v.* Patton, 2 Stewart 38. But it is not necessary to state all the evidence. Allen *v.* Booker, 2 Stewart 21.

The party who excepts to the admission of evidence, must show, in his bill, what the evidence was, or the exception to it will be considered as waived. Snowden *v.* Warder, 3 Rawle 101.

The bill must distinctly show wherein the party may have been prejudiced, by the decision excepted to; for the Court is not bound to give an opinion on an abstract question of law, not belonging, or not shown, by the bill, to belong to the cause. McDougal *v.* Fleming, 4 Ham. 388; King *v.* Kenny, 4 Ham. 79; Hamilton *v.* Russel, 1 Cranch 318; Osbourn *v.* State, 7 Ham. (Part 1st,) 214; Wilson *v.* Jackson, Minor 399.

A deposition excepted to, for impertinency, should be spread upon the record. Stearns *v.* Warner, 2 Aiken 26. See Lovell *v.* Arnold, 2 Munf. 167.

If exception is taken to the refusal of a judge, to instruct the jury in the manner requested, the bill must set forth so much of the evidence as will show that the desired instruction was proper in the case. *Aliter*, where exception is taken to the law, as announced in instructions actually given. Peden *v.* Moore, 1 Stew. and Port. 71. See, also, Swafford *v.* Dovenor, 1 Scam. 165; Gilmore *v.* Ballard, *Idem* 252; Ballingall *v.* Spraggins, *Idem* 330; 2 Tuck. Com. 293, 294; 5 Wheeler's Am. Com. Law 186; Budd *v.* Crea, 1 Halstead 370.

In this case, the evidence which was excluded from the deposition, bill of exceptions, and the jury, related to the very gist of the action, — which was, whether the defendant was master of the vessel, upon which the plaintiff's goods were shipped. Besides, the bill of exceptions, inferentially, states that the evidence went to the jury; because, it says, that such portions were excluded, leaving the inference, that all those portions which are not stated in the bill of exceptions signed by the judge, (including the evidence excluded,) were given to the jury.

It seems, after all, that the judge was not very scrupulous about admitting evidence in a bill of exceptions, when it suited his convenience, or tended to strengthen, in his opinion, his decision; for he admitted the receipt of the defendant, and inserted, in his own handwriting, the testimony of the witness in relation thereto.

There cannot be any doubt, that the evidence in this case, which was excluded by the judge, was material. It tended directly to show that the defendant was not liable. Whether it was material, or not, was a question upon which the defendant desired the opinion of the Supreme Court; and he had a right to have it included in his bill of exceptions, to enable this Court to pass upon it. The decision of the Court below, in refusing to sign the bill of exceptions tendered to him, was unwarranted, and directly in defiance of the law, and the defendant's rights.

The remedy sought in this case, is the only one found in the law. It is full and ample; and this Court will not fail to exercise it.

The Court ordered that an alternative writ of *mandamus* issue to the judge of the Cook county Circuit Court, commanding him to sign and seal the bill of exceptions presented to him, or to show cause by the first day of the next term of this Court, why he does not sign the same.

At the next term of the Court, Mr. Scammon filed in Court the following copy of the alternative writ of *mandamus*, and presented the following affidavits :

" State of Illinois.

" The People of the State of Illinois, to John Pearson, Judge of the Cook County Circuit Court, Greeting :

" Whereas, it has lately been represented to us, in the Supreme Court of the State of Illinois, before our justices thereof, on the part and behalf of Robert C. Bristol, that at a Circuit Court, held in and for the county of Cook, at Chicago, in said county, on the second Monday of May, in the year of our Lord one thousand eight hundred and thirty-nine, a *certain* suit then and there pending in the said Circuit Court, before you, the said judge, wherein John F. Phillips was plaintiff, and Robert C. Bristol was defendant, was called for trial, and tried before said judge, and a jury, and a verdict rendered for the plaintiff in said suit ; upon which, you, the said judge, rendered a judgment thereon against said Robert C. Bristol ; and, that during the progress of said trial, the said Robert C. Bristol, by his counsel, did then and there exceptions to the opinions of you, the said judge, allege, and reduced the same to writing, and tendered the same to you, and requested you, the said judge, to sign and seal the same ; which said exceptions were embodied in a bill of exceptions, in substance, as follows :

" ' Cook Circuit Court, May Special Term, A. D. 1839.

" ' Robert C. Bristol ⎞
            *ads.*          ⎟ *Assumpsit.*
    John F. Phillips.  ⎠

" ' Be it remembered, that when this cause was called for trial, the plaintiff filed his exceptions to the deposition of John Moore, which said exceptions are in the words and figures following (Here insert them) ; and upon motion of the plaintiff's counsel, the Court excluded the following portions of said Moore's deposition, to wit :

" ' " In answer to the question, put by the defendant's counsel, In whose name were the papers made out as master of the steamboat Madison, in 1838 ? the witness says they were taken out in the name of John McFadgen. The above question was objected to, and the answer taken subject to the opinion of the Court."

" ' " In answer to the question, In whose name were bills of

The People *v.* Pearson.

lading signed for goods shipped on board the boat during the trip Mrs. Phillips came up ? witness says they were generally signed by winess, as clerk, and sometimes in the name of John McFadgen, but recollects none signed in the name of Capt. Bristol; still there may have been some thus signed." To which opinion of the Court in excluding such portions of said deposition, the defendant, by his counsel, then and there excepted. The defendant then offered in evidence the following paper, calling it the clearance papers of the James Madison : (Here insert it.)

" ' The plaintiff's counsel objected, and the objection was sustained. To the opinion of the Court in sustaining said objection, and excluding said paper, the defendant, by his counsel, excepted.

" ' The plaintiff's counsel then offered in evidence the signature of Capt. Bristol to the following receipt, after having proved the signature by J. M. Underwood, to wit :

" ' " Steam-boat Jas. Madison, 25 May, 1838.

| | | | |
|---|---|---|---|
| S. W. Cooper, | $ 3,35 | J. Pergsley, | $ 55,36 |
| J. & O. Smith, | 50,00 | Mr. Sherman, | 50 |
| John McClay, | 5,00 | | |
| Capt. Miller, | 6,75 | | $ 241,07 |
| Jas. McDilley, | 8,57 | A. Perkins, | 53,50 |
| S. E. Phelps, | 30,81 | J. B. Miller, | 6,00 |
| A. Hall, | 20,50 | | |
| Chas. Weston, | 2,00 | | $ 300,57 |
| [M.] | 58,73 | | |

" ' " Rec'd, Chicago, 25 May, 1838, from Kinzie & Hunter, three hundred $\frac{57}{100}$ dollars, being in full for chgs. on goods, per S. B. Madison, as noted on bills of lading.

" ' " $ 300,57. R. C. BRISTOL."

" ' ' To the reading in evidence to the jury of the said receipt, the defendant objected, and the Court overruled the objection, and permitted the said receipt to be read to the jury as evidence, to which said opinions, the defendant excepts severally, and prays the Court to sign and seal this, his bill of exceptions, and make it a part of the record in this case, which is done.' Which exceptions you, the said judge, refused to sign and seal : Whereupon, we being willing that justice should be done in the premises, do command that you, the said judge, do sign and seal the said bill of exceptions, according to the statute in such case made and provided ; or in default thereof, that you make known to us, in said Supreme Court, before our justices thereof, at the Court Room in the town of Springfield, on the second Monday of December next, why you have not done the same.

" [L. S.] Witness, the Honorable WILLIAM WILSON, Chief Justice of our said Supreme Court, at Springfield, this 10th day of August, A. D. 1839. J. M. DUNCAN, *Cl'k. S. C. Ills.*"

The People *v.* Pearson.

" State of Illinois, ss.

"J. Young Scammon, attorney for Robert C. Bristol, doth sol-
emnly, sincerely, and truly declare and affirm, that a writ of *man-
damus*, of which the foregoing is a true copy, and a true copy of
the bill of exceptions therein mentioned, he caused to be delivered-
ed to John Pearson, judge of the Cook Circuit Court, at the last
November term of said Court, at Chicago, in the county of Cook,
in open Court; that said John Pearson, judge as aforesaid, threw
the said writ of *mandamus* and copy of bill of exceptions upon
the floor, and fined the attorney, who delivered said *mandamus*
to said judge, twenty dollars, for alleged contempt of Court in
serving said writ of *mandamus*, as will appear from the affidavit of
Thomas Hoyne, hereto annexed, and made a part of this affidavit;
and this affiant further saith, that the said judge has neglected to
return said writ, or to sign said bill of exceptions, wherefore he
prays that an attachment may issue against the said John Pearson,
judge as aforesaid, and that he may be dealt with according to
law, — or for such other order in the premises, as justice shall re-
quire.                                    J. YOUNG SCAMMON.

" Duly affirmed before me, this 14th day of January, 1840.
       " J. M. DUNCAN, *Clk. S. C. Ills.*

            " *Monday, Nov. 11th*, 1839.
" The Court met after dinner pursuant to adjournment at about
half past one o'clock.

" Judge Pearson took his seat on the platform, and I stood a
little to his right hand on the platform, for the purpose of reading
the record.   My position was such that I faced the bar, — both
myself and Judge Pearson being raised about three feet above
the bar.   Immediately after, the deputy sheriff opened Court by
proclamation, and before any business had commenced before the
Court, Mr. Butterfield stepped towards the Court, and standing
between the bench and the bar, a little to the left hand of the
judge, addressed the Court.   He said that he had received a
communication from Col. Strode, who had been suddenly called
out of town, in relation to business of the Court, which was of an
imperative character.   Court intimated he would hear it.   Mr.
Butterfield then read the communication, and the substance of an
affidavit in the case of the People against John Hudson, and mov-
ed for the trial or discharge of Hudson at this term.   The Court
directed Mr. Butterfield to file his papers and motion, which Mr.
Butterfield did.   Mr. Butterfield, then, with marked politeness
and mildness of manner, handed a paper to the judge, saying that
it was a bill of exceptions in the case of Phillips *v.* Bristol, tried
at a former term.   Court said ' I did not sign that bill of excep-
tions.'   Mr. Butterfield replied ' I am aware of it, Sir, and here,
(handing another paper to the Court,) is a writ of *mandamus* from

the Supreme Court, directing you to sign it. Court said, ' What's that ? ' Mr. Butterfield, in the same courteousness of manner, repeated his remark. The Court, holding the paper towards Mr. Butterfield, said, ' Take it away, Sir.' Mr. Butterfield said, ' I cannot take it, Sir, — it is directed to your Honor, and I will leave it with you. I have discharged my duty in serving it upon you, and cannot take it back.' The Court then said, Mr. Clerk, enter a fine of twenty dollars against Mr. Butterfield.' The Court then threw the papers (bill of exceptions and *mandamus*) over the bench, on the floor, between the bench and bar. The Court then said, ' What do you mean, Sir ? ' Mr. Butterfield replied ' I mean, Sir, to proceed by attachment, if you do not obey it,' — or words to that effect. The Court, in a harsh tone, then said to Mr. Butterfield, ' Sit down, Sir, sit down, Sir,' — and to me ' Proceed with the record, Sir.' After I had read the record of the preceding week, some business of the day was transacted, and I entered that, together with the order of Court to fine Mr. Butterfield twenty dollars for contempt. The business of the Court then under immediate consideration being disposed of, the Court privately asked me if all the orders had been entered, when I answered ' Yes, Sir.' He then particularly directed my attention to an entry, in his docket, of the fine against Mr. Butterfield, and asked if that had been entered ; and I again answered ' Yes, Sir.' He continued, ' Did you enter it as for interruption of Court ? ' I answered, ' No, Sir.' Then he (the Court) continued, ' Enter it for interrupting the Court ; ' when I forthwith interlined the previous order, so as to read ' for a contempt of Court, for an interruption thereof.' I then proceeded to read, by order of Court, and to the reading of said order for contempt of Court as for an interruption thereof, Mr. Butterfield excepted. Mr. Butterfield said it was not for interruption of Court. The Court told me to read on ; and the record having been read, the Court adjourned until Court in course."

" Thomas Hoyne being duly sworn, saith that the facts above set forth, are, to the best of his recollection and belief, the truth in the premises. THOMAS HOYNE."

" Sworn and subscribed before me, this 23d day of November, A. D. 1839.

" FREDERICK A. HOWE, *Justice of the Peace*."

Upon the filing of these papers, J. Young Scammon, the attorney of Bristol, moved for an attachment against the said judge, for his contempt in refusing to sign the bill of exceptions, or to make return of the writ, or for such other relief in the premises as was agreeable to law, and the rules of the Court. The counsel stated that the case was a novel one. He had not been able to find a like case, in any of the books within his reach ; and he was at a loss to determine whether an attachment should be issued

then, or whether the proper course was to issue a peremptory writ, and await the return thereof.

Jesse B. Thomas, Esq., an attorney of the Court, suggested the propriety of deferring action in the case for a day or two. He stated that he had received a letter from Judge Pearson, containing a brief and argument in the cause, and he was informed that the judge intended to resist the application then made ; that the judge would be in town in a few days.   Agreeably to the suggestion, the cause was postponed for some days; and Judge Pearson not appearing, Mr. Thomas filed his brief, but declined appearing in the cause.   The brief is as follows :

" John Pearson, Judge of the Seventh Judicial Circuit Court of Illinois, understanding from an examination of the records of the Supreme Court in said State, that, on application of J. Y. Scammon, attorney of the Court, the following rule has been entered : (Here insert it) requiring the said John Pearson to appear, in this Court, and show cause, why a peremptory *mandamus* should not issue, requiring and ordering him to sign a certain bill of exceptions, presented in the Cook Circuit Court, May Term, 1839. Now, the said judge comes into this Court, and, as a matter of favor, asks the opportunity of presenting the Question of Jurisdiction in this Court, to make the order aforesaid, and also if this Court can issue the writ aforesaid for a non-compliance with said rule.   All which is respectfully submitted.

" JOHN PEARSON, *Judge, &c.*

" 1 Question.   The Court has no power to make the order, or issue a *mandamus*, in any case, to the Circuit Courts.

" 3 Blac. Com. p. 207, or 265 and 110 (or) 85 ; 2 Sect. 4 Art. Const. Ill. ; 4 Sect. Statute, p. 147 ; Re. Stat. p. 327, Sect. 12 ; Do. p. 216, Sec. 187 ; 491 Sec. 19.

" 2.   If they have the power, in any case, it cannot be exercised to compel a Circuit Court to sign bills of exceptions.   The party has another remedy ; and, besides, Courts never grant it except in clear cases, to persons, corporations, or inferior courts, refusing to do an act clearly appertaining to their office.   The signing of a bill of exceptions is not clear and unquestioned, when the judge differs with counsel about what instructions have been given or refused.   If it is to be made clear by the attorney's oath, then the judge is under the attorney.

" 3.   Power implies capability of enforcement of its orders. How is the Supreme Court to enforce this writ ?   It cannot be in vacation, — the bill must be signed in term.

" The Circuit Court is bound to appoint clerks ; if neglected, can the Supreme Court issue a *mandamus*, — and this is a case clearly pointed out by law ?   When a prisoner is in jail, charged, &c., Stat. p. 153, Sec. 27, can he be compelled to appoint the term ?   The Stat. p. 327, Sec. 12, requires judges, &c., &c., to

grant writs of *habeas corpus.* Yet, is there not a discretion, even if the petition comes up to the letter of the law? Can a judge be compelled to do it by the Supreme Court?

" 4. If this writ can issue, let us look at the effects. By the Stat., p. 444, and at common law, the correctness of that return may be denied and tried in the Supreme Court, and if found by the jury or Court against the judge, then he is compelled to pay all the costs. He can, by a malicious, trifling set of lawyers, if such should be found in a circuit, leaguing to harass him, be compelled, every term, to appear in the Supreme Court, and take issue with them on countless bills of exception ; and if he had independence, he would not sign a bill until compelled, if he believe, honestly, that it did not contain the facts. In this way, a combination of designing men might exhaust the means of any judge in the State, or make him truckle to their will, or compel a resignation, from want of funds. Again : It would lead to unpleasant altercations before the Supreme Court, which any man, at all acquainted with courts, knows would operate unfavorably for the Circuit Court and the bar ; for if the judge was honest, he would not refuse to sign the bill, if correctly drawn, in his opinion, and if the attorney could, nevertheless, obtain a writ to compel him, he would not, as a Court, sign the bill, until compelled. These are only some of the consequences ; others might be noted, if time would allow.

" 5. Could the Supreme Court have granted this writ to one of the Supreme Judges, when they held the Circuit Courts? If granted, they could, in case of disobedience, enforce it, if the power is given them. Admit it, — see the absurd consequence of the proposition, — one judge is refractory, and the rest compel him, by imprisonment, and so on, until the Court is exhausted of a quorum.

" We are not to suppose, that through courtesy a man will comply, — the law goes upon the supposition of disobedience and compulsion.

" 6. If the Supreme Court of the United States were to order the Supreme Court of Illinois to reverse one of its orders or decrees, how could it compel the Supreme Court, in case of refusal?

" 7. If the District or Circuit Court of the United States should grant a *mandamus,* to compel a Circuit Court to do a certain act, in that Court, what power has it to enforce it? They are all bound to obey the same United States Constitution, and unless that instrument requires obedience from the State courts to the federal court, the United States Court has no power, — its order is lame.

" 8. Admit the power, for argument, and what hand is to serve this writ, or rule, which is the same thing? Is it the attorney? Who gave him power to serve writs? How can he enforce the

writ ? The hand, that is bound to serve a writ, has the aid of the country to compel its enforcement ; he can imprison, if resisted, and for disobedience to this writ, the penalty would be imprisonment. Stat., p. 140, process to be executed by sheriff, unless he is interested, then to the coroner, &c. &c. Stat., p. 149, Sec. 11 ; also, Stat., p. 374, Sec. 5, duty of sheriff to execute process. 1 Blac. Com. p. 208 (or) 339, Chap. 9, Book 1 ; 1 do. 251, (or) 342, note by Chitty, Chris. Arch. 'The sheriff is truly to return and serve the king's writs, to execute all process issuing from the king's courts.' Salk. 175 ; 2 L. Rayd. 1195 ; Fortes. 129 ; Tidd, 8 edit. 52. ' By the common law, sheriffs are, to some purposes, considered as officers of the courts, as the constables are to the justices of the peace.' ' As writs and process are directed to the sheriff, neither he nor his officers are to dispute the authority of the court, out of which they issue ; but he and his officers are, at their peril, truly to execute the same, and that according to the command of the said writs.' The office of sheriff was created at common law, for that purpose. ' Bacon's Abrig't, Sheriff.' He is called the ' officer of the shire,' or *vice comes*, or deputy to the earl of the county, whose writs, orders and commands be obeyed. But, in process of time, the sheriff became to do, and employed directly to do, all the king's business, in the shire or county, receiving his commission directly from the king. Ever since, he has, in this country and in England, always been an officer, selected and chosen to execute the business of courts ; and no one else can do it, unless the exception is made by statute.

" This last branch of the subject is touched, anticipating a motion to make the rule, before entered, made absolute. No service has as yet been made, even by the attorney ; but I never intended, and do not now intend, to dispute the manner of serving the present rule. It is the main question I wish to present, and lastly, when necessary, the manner of serving these writs. If this rule had been served, by leaving a copy, or handed quietly to me in Court, unaccompanied by insulting language and manner, (which manner shows the beauties of this right claimed by lawyers,) I should have received the rule, and then I intended to make the question, as here presented. I never intend, as circuit judge, to come into the Supreme Court and try questions of fact, before a jury or Court, with any member of the bar, claiming to set me right about a bill of exceptions.

"J. PEARSON."

SMITH, Justice, delivered the opinion of the Court :

An alternative *mandamus* having issued to the judge of the Seventh Judicial Circuit, and he having made no formal return to the writ, nor returned the writ itself, but through the medium of counsel,

filed what purports to be an argument against the power of this Court to take cognizance of the case ; the Court are compelled to treat the case as one in which its authority has been disregarded.

It does not, however, become necessary for the purpose of the execution of its final order to resort to any other mode, than to consider the answer filed as an insufficient compliance with its mandate, contained in the alternative writ of *mandamus* heretofore awarded, and therefore to award a peremptory writ, directing the signing the bill of exceptions required by the first writ.

If the judge had been of opinion, that the bill of exceptions he was required to sign, was objectionable, or contained matter which was not excepted to, or the same was untruly or incorrectly stated in the bill, he should have returned the causes of his objections ; and this Court would not compel the signing of a bill, which did not truly state the facts as they occurred at the trial.

We have looked into the grounds assumed by the judge, in his argument, and recurred to such cases as have occurred, within our reach at this time, having a bearing on the power of superior tribunals over the duties and acts of inferior ones, and the right of compelling the execution of duties and acts by writ of *mandamus*. A reference to some of the principal ones will be made, to show the principles on which they have been granted ; and how far they may either bear on the present question, or exempt it from their operation. The Supreme Court of the State of New York has assumed a general supervisory power over other Courts of the State, similar to that of the King's Bench in England, and they have most generally confined the exercise of the power to grant writs of *mandamus*, to clear cases of ministerial duty. In the case of Wilson v. City of Albany,(1) the judges said that wherever a discretionary power was vested in an officer, and he had exercised that discretion, they would not interfere, because they would not control ; and they ought not to coerce that discretion.

In Gilbert's case, (2) the Court refused to issue a *mandamus* to require the Court of Common Pleas to strike out certain conditions, which it had thought proper to annex to one of its orders. The same Court refused to compel the Court of Common Pleas to hear charges against a justice of the peace. It has, however, awarded writs of *mandamus* against judges of the Common Pleas to compel the signing of bills of exceptions, in several cases. In Pennsylvania, the Supreme Court of that State, which is one of general, appellate jurisdiction, has refused to say whether it will issue, in any case, a *mandamus* to a Court of Common Pleas.(3)

Out of twenty applications made to the Supreme Court of the

(1) 12 Johns. 414.   (2) 3 Cowen 59.
(3) 3 Binney 273 ; 1 Sergt. and Rawle 195 ; 8 Sergt. and Rawle 24.

United States, since its organization, but five have been granted. These cases are, United States v. Olmstead, 5 Cranch 115 ; Livingston v. Dergenions, 7 Cranch 577 ; Ex parte Bradstreet, 7 Peters 634 ; New York Insurance Co. v. Wilson, 8 Peters 291 ; Kendall v. United States, 12 Peters 524.

The results to which the Court came in these cases are, 1. To issue a *mandamus* to a District judge, to execute a decree of his Court, in an admiralty case where execution had been delayed on account of the extraneous interposition of a State law. 2. To proceed to a final judgment, and not stay proceedings indefinitely. 3. To reinstate a suit dismissed, on motion, after issue joined, so that the parties might have final judgment. 4. To sign judgment on the record, where it had been previously recovered, and entered according to law. 5. To compel the Postmaster General to enter a credit to individuals, awarded to them by the solicitor of the United States Treasury, in pursuance of an act of Congress, the act being definite and purely ministerial. The principle established by some of these decisions is, that there must be a suit pending in a Court below ; and that the act which the inferior Court is required to perform, must be ministerial in its character, and necessary to the final termination of the cause in that tribunal. The fifteen cases in which that Court refused applications for writs of *mandamus* are, United States v. Lawrence, 3 Dallas 42 ; Marbury v. Madison, 1 Cranch 137 ; *Ex parte* Burr, 9 Wheat. 529 ; Bank of Columbia v. Swaney, 1 Peters 567 ; *Ex parte* Crane, 5 Peters 190 ; *Ex parte* Roberts, 6 Peters 216 ; *Ex parte* Davenport, 6 Peters 661 ; *Ex parte* Bradstreet, 8 Peters 588 ; the same, 4 Peters 102 ; New York Insurance Co. v. Adams, 9 Peters 573 ; Postmaster General v. Trigg, 11 Peters 173 ; *Ex parte* Story, 12 Peters 339 ; Poultney v. Lafayette, 12 Peters 472 ; *Ex parte* Hennen, 13 Peters 230.

The principles established in these cases, in regard to this writ, are these. The Supreme Court will never compel an inferior Court, in which a suit is pending, to do an act relating to either the practice of the Court, or the merits of the case, in regard to which act the inferior Court is vested with a judicial discretion, even if they are of opinion, that the Court erred in the exercise of that discretion.

In the case of Bradstreet,(4) which was a rule against a District judge, to show cause why a *mandamus* should not issue to compel him to sign a bill of exceptions, Chief Justice Marshall, who delivered the unanimous opinion of the Court, said, " This is not a case in which a judge has refused to sign a bill of exceptions. The judge has signed such a bill as he thinks correct. If the Court had granted a rule on the District judge to sign a bill

(2) 4 Peters 102.

of exceptions, the judge would have returned that he had performed that duty. But the object of the rule is to oblige the judge to sign a particular bill of exceptions, which had been offered to him.

" The Court granted the rule to show cause, and the judge has shown cause by saying, that he has done all that can be required from him ; and the bill offered to him is not such a bill as he can sign. Nothing is more manifest than that the Court cannot order him to sign such a bill of exceptions. The person who offers a bill of exceptions, ought to present such a one as the judge can sign. The course to be pursued, is either to endeavor to draw up a bill, by agreement, which the judge can sign, or to prepare a bill to which there will be no objections, and present it to the judge."

The Chief Justice further observes, " that there is something in the proceedings which the Court cannot sanction," and remarks on the time and manner of the course pursued in the case, and then indicates the course which ought to be pursued, which is not necessary to be detailed.

The principles, however, settled in this case, seem to be, that a *mandamus* will be allowed to cause a judge to sign a bill of exceptions ; but that the judge must determine its accuracy, and whether it correctly recites the points made, and opinions excepted to ; that he must sign such a one as he believes to be correct and none other ; that he cannot refuse to sign a bill altogether, but must sign one if required, in a case where there has been exceptions taken, provided it is applied for at the proper time. Our statute allowing exceptions to the opinion of the Court, requires the exception to be taken at the trial, and declares it shall be the duty of the judge to allow, and seal, and sign the same. We suppose it would best comport with the accuracy and regularity of proceedings, in such cases, if the practice were to conform to the intentions of the law ; and that much unnecessary difficulty might be avoided, by reducing, in the language of the law, the exceptions to " the opinion of the Court to writing, during the progress of the trial," and have it completed while the transaction was in the memory of all the parties interested. No difficulty could then occur ; and thus much disagreement would be avoided. It must, also, be conceded, as settling the rule, that the act of signing, and approving the bill, is in its nature ministerial, though a legal discretion is in some measure to be used, in determining the character of the bill to be signed, inasmuch as it is not every bill which may be presented, that the judge would be bound to sign. We see, then, by the character of the cases cited, where this discretion commences, and where it terminates ; to what cases it may be arranged, and in what, it cannot be claimed. In looking into the present case, it appears the judge has signed a bill of exceptions ; but the party complains that he has not inserted certain portions of the deposition of the wit-

The People *v.* Pearson.

ness, which he excluded from being read on the trial, and to
which order of the judge, excluding those portions, he took the
exceptions.   Now, had the judge offered explanation of a satis-
factory character, why he could not sign the bill presented, with
the excluded portions of the depositions, nothing would have been
more certain, than that this Court would not compel him to sign
a bill which he could not, in his judgment, properly do, in the cor-
rect and faithful discharge of his duties.   Had he made a return
to the writ, and given this explanation, as in the case referred to
in the Supreme Court of the United States, of Judge Concklin,
we should have said he had done all that can be required of him.

The law makes him, and properly so, the judge of the proprie-
ty and accuracy of the act he is called on to solemnly verify the
truth of, so that it shall become a part of the record in the cause ;
and it is not for other parties to determine the truth.   He acts
under the solemnities of an oath, and the strong presumption that
he will faithfully and honestly perform his duties.   That he will
not violate the obligations imposed on him for their faithful dis-
charge.   In the absence of such a return, with such explanatory
reasons for a refusal to sign the bill of exceptions required by the
party, we are bound to award a peremptory *mandamus* to cause
the signing of the particular bill of exceptions exhibited ; and it
is awarded accordingly.

*Peremptory Writ of Mandamus granted.*

*Note.*   *Mandamus* never lies if there is another specific legal remedy.   King
William Justices *v.* Munday, 2 Leigh 165 ; Oakes *v.* Hill, 8 Pick. 47.

To entitle a party to a *mandamus*, a complete, not an inchoate right must be
shown ; and it will not be granted unless there is no other specific remedy.   The
People *v.* Trustees of Brooklyn, 1 Wend. 318; State *v.* Holliday, 3 Halst. 205 ;
Marbury *v.* Madison, 1 Cranch 137 ; 1 Peters' Cond. R. 267.

It lies where there is no other remedy at law, although equity might relieve,
or the party against whom it is asked, might be criminally prosecuted.   People
*v.* Mayor, 10 Wend. 393.

Whether a *mandamus* lies in any case from the Supreme Court of Pennsylva-
nia, to the C. P., is doubted in Commonwealth *v.* Judges of C. P., 3 Binney 273;
1 S. & R. 187; 8 S. & R. 211.   In New Jersey it is settled, that though a *man-
damus* will lie to an inferior court refusing them to proceed to judgment, yet it
will not lie to command them to proceed to any particular judgment, and much
less to require them to set aside a verdict and grant a new trial, or even to grant
a rule to show cause for that purpose.   Squier *v.* Gale, 1 Halst. 157 ; Roberts *v.*
Holsworth, 5 Halst. 57; And see Berry *v.* Callet, 1 Halst. 179 ; Anon. 2 Halst.
160 ; The State *v.* Salem Pleas, 4 Halst. 246.

Where the record does not show mistake, misconduct, or an omission of duty
on the part of a inferior court, unless such a *primâ facie* case is made out, sup-
ported by affidavit, as would make it the duty of the Court to interfere, a rule
to show cause will not be granted.   Postmaster *v.* Trigg, 11 Peters 173.

In Indiana, where the judgment of the Circuit Court is reversed, and the
proceedings up to a certain point, are set aside at the costs of the defendant in
error, and the cause is remanded for further proceedings; if the Circuit Court
refuse to render a judgment for the costs according to the mandate, the Supreme
Court will grant a rule to show cause why a *mandamus* should not issue.   Jared
*v.* Hill, 1 Blackf. 155.

The bill of exceptions in this case, not being sealed by a majority of the judges
present, but by the president alone, a rule on the associate judges to show cause

The People *v.* Pearson.

why a *mandamus* requiring them to seal the bill should not issue, was formerly granted on the motion of the appellants. The rule having been served, and no cause shown, the Court afterwards awarded a peremptory *mandamus.* The bill was now returned sealed by the judges. Springer *et al. v.* Peterson *et al.* 188.

*Practice in relation to mandamus :*

If an alternative *mandamus* is defective in form and substance, defendant may move to quash it. Commercial Bank *v.* Canal Com'rs, 10 Wend. 25. If the opposite party appears to show cause why it should not issue, the relator holds the affirmative. People *v.* Throop. 12 Wend. 183. An alternative *mandamus* may be made returnable to a special term. People *v.* N. Y. Com. Pleas., 13 Wend. 649.

At any time after a return to an alternative *mandamus*, before a peremptory writ is awarded, defendant may show any defect in substance. Commercial Bank *v.* Canal Com'rs, 10 Wend. 25.

A peremptory *mandamus* to a Court of Common Pleas is not granted in the first instance, but an alternative *mandamus*, or rule to show cause. The People *v.* Judges of Cayuga, 2 Johns. Cas.; The People *v.* Judges of Washington, 1 Caines 511.

Where a rule to show cause why a *mandamus* should not issue, has been obtained, and cause is shown, but not satisfactory, a peremptory *mandamus* will be granted in the first instance ; but for the purpose of suing out a writ of error, defendant may make up the record *pro forma.* People *v.* Throop, 12 Wend. 183.

The first writ of *mandamus* always concludes with commanding obedience, or cause to be shown to the contrary ; but if a return be made to it, which upon the face of it is insufficient, the Court will grant a peremptory *mandamus*, and if that be not obeyed, an attachment will issue against the persons disobeying it. If no return be made, the Court will grant an attachment against the persons to whom the *mandamus* was directed. 2 Wheat. Selwyn 1112.

Where an alternative *mandamus* to sign a bill of exceptions had been served, but the judges had not made a return to it, the Court said, "It is not requisite that we should go through the process and delay of rules and attachments, in order to compel a return to the first *mandamus.* The alternative in it was intended for the benefit and convenience of defendants. As the first writ has been regularly served, we may, at our discretion, order a peremptory *mandamus.*" The People *v.* The Judges &c. of Ulster, 1 Johns. 64.

On an application for a *mandamus*, where both parties are heard, and there is no dispute about the facts, and the law is with the application, a peremptory *mandamus* will be granted in the first instance. In such a case, the Court will not put the party to the useless delay of going through with the forms of an alternative *mandamus. Ex parte* Rogers, 6 Cowen 526.

The form of the writ of *mandamus* in this case, is like that in 4 Cowen 74. See form in 1 Cowen 22.

On a motion for a peremptory *mandamus*, the Court do not look at the affidavit on which the alternative writ was founded ; their decision is made solely upon the return to the alternative writ. 7 Wend. 474.

A *mandamus* may be served by delivering a copy thereof, at the same time showing the original. 1 Johns. 64 ; 4 Cowen 403, 74. In this last case it appeared that the writ was served in vacation, on each of the judges separately, the attorney retaining the original writ.

The Court refused to quash a bill of exceptions signed in vacation, in obedience to a *mandamus*, although it was signed by the judges when they were not together. 7 Wend. 537.

*Decisions in Illinois in relation to mandamus :* Street *v.* County Com'rs. of Gallatin, Breese 25 ; The People *v.* Forquer, Breese 68 ; The People *v.* Pearson, 1 Scam. 488, 473 ; The People *v.* The Auditor, 1 Scam. 537 ; The People *v.* Fletcher, *Post ;* The People *v.* Cloud, *Post.*

§ 13 of " *An Act further defining the duties of the Attorney General, and for other purposes*," provides that, " The sheriff or coroner of the proper county shall hereafter serve and return all writs and process issuing out of the Supreme and Circuit Courts, unless otherwise provided for by law." Acts of 1840–1, 37. Whether this section was intended to apply to writs of *mandamus*, is, perhaps, matter of doubt. Its language, however, seems sufficiently comprehensive.