FRANCIS H. HATCH *v*. THE CITY BANK OF NEW ORLEANS.

An action can only be brought by one having a real and actual interest.

The cause of action must, in all cases, be stated with sufficient certainty, to prevent a repetition, when once investigated and decided.

Where part of the directors of a bank exclude one of their number from the privilege of examining the discount book, to which all the rest have access, on the ground that he is hostile to the institution, and will use the information he may obtain to its injury, a mandamus will lie to enforce the right, which is essential to the discharge of his duties as a director.

To obtain a mandamus the applicant must allege and prove the duty required to be performed, and that he has been injured, or apprehends injury, or that he has been deprived of some legal right.

Under the Code of Practice the powers of the courts of this state as to issuing writs of mandamus, are more extensive than those of the tribunals governed by the common law.

Under art. 831 of the Code of Practice, a mandamus may be issued where the party has other means of relief, if the slowness of the ordinary legal forms is likely to produce great delay and defeat the ends of justice, as well as in cases where there is no other specific remedy.

Mere irregularity, is not enough to obtain an injunction; injury to the applicant, or apprehension of injury, must be shown.

By the charter of the City Bank of New Orleans, the transfer book, and the minutes of the proceedings of the Board of Directors, are the only books required to be kept. The latter is only open to the inspection of the stockholders during one month in each year; as to the former, the charter is silent.

The books of a corporation are evidence of the acts and proceedings of the body, and, with respect to the corporators, are public. They are common evidence, and each individual having a legal interest in them, has a right to inspect, and to use them as evidence of his rights. But a mandamus will not be issued to compel the keeper of such books to allow an inspection, or the taking of copies, unless a clear right be shown, and some just or useful purpose is to be effected.

APPEAL from the Commercial Court of New Orleans. A full statement of the case will be found in the following judgment, by *Watts*, J, from which the City Bank has appealed.

This is an application for a mandamus. The petition alleges that the petitioner is a stockholder and director of the City Bank, that for purposes material to the interests of the institution, and of the public, he is desirous of examining the stock ledger of said bank, or the book containing the list of stockholders, and also the transfer book, or book containing the transfer of the stock of the bank; and that he has made application to the President and Board of Direc-

tors to that effect, which has been by them, and still is refused, and all access to those, as well as to the other books of the bank has been and is refused to him.

The petitioner prays, that after due proceedings had, and notice to the President of said Bank, Samuel J. Peters, Esq., it may please the court to order, that access to, and inspection of said books be afforded to him, and for such other relief as the nature of the case may require.

The defendants answer, that even admitting, which they by no means do, all the allegations in the petition, the plaintiff is not entitled to a mandamus, wherefore he says that he is not bound further to answer to the said demand. But should the said exception be overruled, in that case he denies expressly all the allegations in the petition contained.

The respondent further says, that by the charter of the City Bank, the entire management of its affairs, and control of its books and property, are confided to a Board of Directors, who administer the same by a majority, and who have the right of deciding when, by whom, and for what purpose the said books shall be inspected, and that the petitioner has no right in law, to demand the inspection, at his pleasure, of the said books.

The facts admitted, or proved are, that the petitioner is a stock-holder and director of the bank; that he applied to the clerk for the books mentioned in the petition, and that he was referred to the President, who said he could not permit them to be examined, except on an order from the Board: that all the books of the bank necessary for any director to ascertain the state of the affairs of the bank, are placed on the discount table on every discount day, to wit, twice a week, and that on these occasions every director has access to such books, and may examine them, but that the stock and transfer book, or list of stockholders, is never laid before the board.

The following extract from the minutes of the proceedings of the Board, is also in evidence :

'CITY BANK, New Orleans, 19th January, 1842.

'The following resolution was presented to the Board by Mr. Hatch, and seconded by Mr. Albert, viz :

'Resolved, That it is the sense of this Board that the stock ledger

of this institution is open to the inspection of any director of the bank.

'The yeas and neas being called for, it appeared that Messrs. Hatch and Albert voted in the affirmative, and Messrs. Avery, Williams, Hubbard, Turner, McCawley, Lockett, Casey, Hyde, and Peters, voted in the negative; consequently, said resolution was not adopted.'

From the charter of the bank, Acts of 1831, p. 26, we learn that the capital consists of 20,000 shares of stock, at $100 each; that the election of directors is held on the first Monday of March in each year; that no stock can be voted on, which has not been held for ninety days previous to that date; that there is a scale of votes, and that no stockholder can give more than thirty votes; and that each director must be a stockholder of ten shares.    The charter further provides, that the transfer of stock shall be made on a transfer book, kept for that purpose; that the Legislature shall at all times have the right of examining into the state of the affairs of the bank; and that any three stockholders may, within one month previous to the election, call for an inspection of the minute book.

From the petition, it will be seen that the petitioner carefully abstains from setting forth, otherwise than in the most general terms, the motives or reasons which induce him to call for the inspection of the stock ledger, stock list, or transfer book.    The answer contains a peremptory exception to the petition, on the ground that, admitting all the facts in it, the petitioner is not entitled to a mandamus.

Under the allegations of the petition, and this issue, the petitioner puts himself on his naked legal right, as a stockholder and director, to examine the books specially referred to by him.

In argument, it has been urged by all the defendants' counsel, that the petitioner was bound to set forth special motives and reasons for making this call of inspection; and although the counsel declared that they did not choose to make a special exception of this nature, and were willing to take any sufficient special reason or motive which might be assigned *ore tenus*, yet they have reiterated the principle that the petition ought to be dismissed for want of the assignment of any such reason or motive.    The plaintiff's counsel has stated that his reason for not making such an assignment, was,

that it might have been traversed, and lead to an irrelevant issue. I do not concur with him in this, for I am of opinion that any reason or motive which might have been assigned, could not be traversed. I am also of opinion, that in such cases, a party may have naked and abstract rights, for the exercise of which, he is not bound to assign any reason. But even if this were matter for special exception, it has been my practice, since I have been on the bench, always to drive parties to plead any matter of special exception, and not to allow them to take advantage at the trial, of vagueness and generality in the petition. I take it for granted, when a defendant does not call for specifications, that he admits himself to be in possession of full knowledge of the subject matter in controversy, and that he is ready to go to trial, and meet any evidence on the matter which may be brought against him. In the course of ten years experience, I have never found an instance of surprise or of inconvenience, from this mode of proceeding. The peremptory exception is attempted to be sustained on the ground that a party is not entitled to the remedy of a mandamus, when he can assert his rights by any ordinary remedy. This principle is undoubtedly true as a general one, though there may be doubt as to its application in any particular case. The articles 829, 830, and 831, in the Code of Practice, on the subject of the writ of mandamus, are as follows:

' Art. 829. This is an order issued in the name of the state, by a tribunal of competent jurisdiction, and addressed to an individual, or corporation, or court of inferior jurisdiction, directing it to perform some certain act belonging to the place, duty, or quality, with which it is clothed.

' Art. 830. The object of this order, is to prevent a denial of justice, or the consequence of defective police, and it should therefore be issued in all cases where the law has assigned no relief by the ordinary means, and where justice and reason require that some mode should exist of redressing a wrong, or an abuse of any nature whatever.

' Art. 831. This order may be issued at the discretion of the judge, even when a party has other means of relief, if the slowness of ordinary legal forms is likely to produce such a delay that the public good, and the administration of justice will suffer from it.'

These articles contain the substance of the rules laid down in the elementary writers on the common law, and, I think, extend the doctrine and application of the writ of mandamus further than is allowed by the common law courts. The counsel for defendants have cited Angel and Ames on Corporations, pp. 408, 429, and 441. 4 Bacon Ab., tit. Mandamus, sec. 7; a case from 22 Eng. Com. Law Rep., p. 40, and the case of *The State* v. *Dunlap*, 5 Marţin, 271.

I cannot think that this last case would be held to be law, in our own courts at the present time. The Code of Practice did not then exist, and the judges were very doubtful about their jurisdiction in cases of these unusual writs; and they have even within a very short time wholly changed their views on the subject of the writ of mandamus. The general principle that a mandamus is a high prerogative writ, has been much urged by the senior counsel of the defendant. I admit that it is necessary to preserve the distinction between ordinary actions and these summary remedies, and that they are not to be resorted to as the ordinary modes of proceeding for asserting ordinary rights; and I acted upon this principle when I refused the mandamus in the case of *Bayon* v. *The Mayor of New Orleans et al.*, 9 La., 578. ' Since I have had the honor of a seat on this bench,' says Lord Tenterden, ' I have always thought that the power and authority of the court were limited by the practice of our predecessors; and I have been anxious not to assume, or be a party to assuming, any authority for the exercise of which I could find no precedent: for this reason, when my attention was called to the terms of the present rule, which demands an inspection and liberty to take copies of all records, books, papers, and muniments belonging to this Company, or relating to its affairs, I asked early in the discussion, if there were any precedent for granting a mandamus under such circumstances, my general recollection being that there was not, but that in all the cases where a mandamus had been granted, the application had been limited by some legitimate and particular object, in which the party had an interest.' Even when I find so able a man as Lord Tenterden using such language, it excites a smile to think to what results the system of exclusive reliance on precedents must lead a court in any civilized country, which binds itself strictly by such a rule. If our

fathers made precedents for us, who made precedents for them? The everchanging phases of human affairs, the new, extraordinary, and unexpected developments in the progress of the history of the laws and customs of a people, require that the decisions of the courts should be governed by principles, rather than precedents, which may be good or bad, and an exclusive reliance on which would keep a nation always in a stationary condition. It frequently happens that there are no precedents, because no such case ever occurred before. I prefer the intellectual confidence of the judge who, when it was urged by counsel, that there was no precedent for a most reasonable application, replied that it was time to make one. *Bank of Kentucky* v. *Ashley and Ella, in error*, 2 Peters, 328. Even the English books admit that the remedy of the mandamus was not understood and properly applied until the time of Lord Mansfield, which is only sixty years ago. It appears to me that all these cases must rest on their own particular circumstances. Many of the English cases proceed on the distinction of remedies at law and remedies in chancery; and those referred to and cited in Bacon, &c., were cases of complex rights which required minute investigation of facts, the raising of formal issues for trial, &c.; while I consider that the remedy of a writ of mandamus requires that the right, sought to be enforced, should be clear, simple, and easily recognized. The case of *Rex* v. *The Merchant Taylor's Company*, 22, E. C. R., required a long and tedious investigation, by a suit in chancery. The Company was not a trading company, but a guild of trade and charitable corporation. The refusal of the mandamus by Lord Tenterden was therefore correct, but such refusal should have been placed on the ground of principle—not on the want of precedent. The case of *Rex* v. *The Bank of England* was of a like nature, so far as it required a long and tedious investigation. I confess, also, that I am utterly at a loss to understand what kind of an action the petitioner could bring, to assert the right in question, supposing him entitled to it. The whole matter is fairly and fully brought up in the present proceedings, and no equivalent to the right claimed could be given in any other form of action. In the case from Johnson, where the court refused a mandamus to transfer stock, there was full and adequate remedy in damages for the value of the stock, which was susceptible of precise estimate in money;

but a right of access to and inspection of books is not susceptible of any measure of value, and the only adequate relief is the specific one demanded. The present case is analagous to that of *Lalland e* v. *The Louisiana State Insurance Company*, in which the Supreme Court expressly decided, that a mandamus was the only proper remedy. 9 La., 326. My own opinion is, that wherever these peculiar remedies lie, they may and ought to be exercised by and in favor of any individual who chooses to incur the expense of asserting a right, common to him with others. In the state of New York the right to provoke the forfeiture of the charter of any corporation, is placed in the hands of any individual who will give security for the costs, and is patriotic enough to take upon himself to assert his own rights and those of his fellow citizens. However much, therefore, english institutions, english precedents, and english principles of law may serve as general landmarks, it is manifest that they must be greatly modified when applied in our country. As I understand these english authorities, I am of opinion that none of them bear any analogy to the present case. The petitioner is asserting a right, which, if he possesses it, can be asserted in no other form of action or mode of proceeding; and, therefore, the peremptory exception, on the ground that he could have a remedy by an ordinary action, is wholly untenable, and is overruled.

We come to the next ground of defence, to wit, that by the charter of the City Bank, the entire management of its affairs, and control of its books and property, are confided to a Board of Directors, who administer the same by a majority, and who have the right of deciding when, and by whom, and for what purpose the said books shall be inspected, and that the petitioner has no right to demand the inspection, at his pleasure, of the said books.

It may undoubtedly be a matter of some delicacy to determine, what part of the books of a corporation is of right subject to the inspection of the corporators. Each case must depend on its own circumstances. In Angel and Ames, on Corp., 408, it is laid down as a general principle, that ' with respect to the members of a corporation, the books of the company are public books; they are common evidence, which must of necessity be kept in some one hand, and then each individual possessing a legal interest in them, has a right to inspect, and to use them as evidence of his rights.'

Again, p. 441, it is said, ' so a corporator may have a mandamus to compel the custos of corporate documents, to allow him an inspection, and copies of them at proper times, and upon proper occasions ; he showing clearly a right on his part to such inspection and copies, and a refusal on the part of the custos to allow it.' It is not only as evidence of his rights, that a corporator may claim the production and inspection of the corporation books. I lay down the general principle that if the exercise of his rights and duties requires, or will be aided by the inspection of any of the books of the corporation, the corporator is entitled to such inspection, though for no other purpose than to aid, guide, and assist him in the exercise of those rights and duties. An election of directors of this bank is impending. It is or may be important to the corporator to know who are the stockholders, qualified by the amount of stock held by them, to be elected directors, that he may make a judicious selection of the managers of their common property, and he has a right to this knowledge, in order that he may confer with his co-proprietors, and call for their aid, advice, knowledge, information, and co-operation in the choice of suitable directors. The exercise of this right admits of no delay, otherwise it would be lost. I am of opinion also, that a corporator is entitled to an inspection of the transfer book, in order that he may make enquiry and ascertain if simulated transfers have been made, in order to evade that provision of the charter which limits the number of votes. For these and other purposes connected with his rights and duties as a corporator, he is entitled to an inspection, and he is not to be debarred therefrom by any supposed possibility, that he may abuse the information which he may thus obtain. There is nothing in the charter of this bank which confines the control of its books to the directors, in such a manner as to exclude inspection by the stockholders. It is enough to decide upon the question raised as to the right to inspect these books. The right to inspect books of any particular corporation must depend upon the nature of that corporation, and of the books, the inspection of which is called for. There cannot be the remotest danger to any bank from letting it be known to the corporators, and through them even to the public, who are the stockholders of the bank ; and per-haps, if more of their proceedings were made public, there would be more safety for the stockholders and the community. A bank

is a trading company, and every partner of a trading company has the right to the inspection of the common books at reasonable times, and so as not to interfere with the transaction of business ; and I am inclined to the opinion, that every stockholder has a right to the inspection of all the books of the bank.

We come now to notice some of the objections urged by the counsel for the defendants. It has been urged that the petitioner has acknowledged that the Board of Directors was the only competent tribunal to decide upon the right claimed by the petitioner, and that the 16th section of the charter having provided for the examination of the minute book upon the demand of three stockholders one month previous to the election, and another section having reserved to the legislature the right of full examination into the affairs of the bank, no stockholder can claim the right of inspection or examination beyond what is there given. These positions are based upon the principle set up in the answer, that the president and directors have the full and exclusive management of the affairs of the bank, so as to exclude every one else, except in the manner pointed out by the statute, from obtaining information, and that the petitioner so considered -it when he moved the resolution above set forth. These positions are clearly untenable. Even if it were true that the petitioner had considered, that it was only the directors who had the power to give or refuse the information he asked for, his own opinion of his legal rights is not binding either upon himself, or upon the court, if he should happen to make a mistake in relation to them. The petitioner might with the most perfect propriety ask as a favor, what he might claim as a right. He might wish to see how far the directors would carry their refusal to give him the information he required, and to obtain the formal evidence of such refusal. The sections of the charter confer either additional rights upon the stockholders, or give their rights a definite form, but they do not contain. any words which would exclude the corporators from the examination of any books to which they were, on general principles of law, entitled to access, and these statutes are too loosely drawn to be the exclusive measure of legal rights. I incline to the opinion that even the minute book is open to public inspection, and that, if it be necessary for this purpose, a copy of the book, another room, and a clerk should be provided for the use of

the stockholders. Certain books are placed upon the table of the directors when they meet in consultation ; and one of the counsel advanced the position, that except when at the board, or acting under the direct authority of the board, a director is no more than any other stockholder. To this doctrine I cannot assent. It is understood that all other institutions have established by-laws, by which directors are excluded from examining books which contain what are called individual accounts. Of the ground of this exclusion I am not aware, and, perhaps, if it were examined, it might be found more plausible than satisfactory ; but of this I am satisfied, that, with the exception of such books, a director has, at all seasonable and proper times, a right to examine the books of the bank, and that he is not restricted in his examination to the hours of discount, which are short and too much occupied to allow of the examination to which he is fairly entitled. I have had some experience in investigating the manner in which bank affairs are conducted, having sat for eight weeks, at three different times, on an inquest over the Planter's Bank ; and the experience thus acquired, and the recent catastrophe of the Bank of the United States, satisfy me that the greatest danger to these institutions, is when they are taken possession of and retained by a party of directors, and used for their own purposes. The doctrine contended for by the defendants' counsel, would have the effect of making all corporations close corporations ; a system which grew up to a frightful extent in England, favored as it was by other depositories of power. The courts had manacled themselves by their decisions, until it required all the power of the omnipotent and reformed parliament of England, to free the nation from the incubus. There are too many corporations, and they have been too often badly managed, for the courts of this country to lean in any other way, than in favor of publicity and free examination. One of the counsel of the defendants has suggested, that if the right claimed by the petitioner be granted, it may be used for the purposes of speculation by the directors and stockholders, who know the exact state of the affairs of the bank. It is obvious that this argument has no weight. A knowledge of the stockholders can generally be obtained at the period of an election, and, at all events, so remote a possibility of abuse, is no reasonable ground for the refusal of a right which may

be used for beneficial purposes. One of the counsel for the defendants sneered at the allegations of the petition, that the information was wanted for purposes material to the interests of the institution and the public, and seemed to consider that the public had no interest in the matter; and that as the management of the institution had been placed by the stockholders in the hands of the present direction, the petitioner had no right to enquire into their mode of management; that it was of no consequence to the public, to use his own language, 'whether the president and his party remained in the control of the bank, or the petitioner and his party acquired it,' and that the only ground which could suggest itself to his mind for the movement of the petitioner was, that an attempt was to be made to turn out the president and his party.

That the public have no interest in the management of these institutions, after the extraordinary scenes which we have witnessed within the last ten years, is a most strange assertion. I have always considered that a fatal blow was given to the principle of the equality of civil and political rights, on which our institutions are founded, when the power of making that, which to all practical intents and purposes, is the money of the country, and which can be used to an indefinite extent, without any real control, was entrusted to private hands; a power which, in fact, is superior in effect and efficacy to that of the executive, the legislative, and the judicial departments of the government. The struggle of the Bank of the United States for existence, which so long convulsed the country, and led to such disastrous consequences, is full proof to the contrary. In that struggle the Bank of the United States was annihilated. I much fear that the struggle of the state banks against the state authorities, may have a similar result. If it be not permitted to use legal and moral means for investigation and reform, or if they prove inefficient, it is much to be feared that less justifiable means will be resorted to. Oppression will make a wise man mad. The refusal of these institutions to fulfil obligations and duties to the community which are so sacred and binding, must result in bad consequences. Injustice leads to retaliation. With regard to the interests of the institution, I do not pretend to say whether it has been well or ill managed, but there is one striking fact, that for five years, with one short interval, the stockholders have re-

ceived no revenue from their property. If the institution be well managed, the public or the stockholders have no interest, whether it be managed by the President and his party, or by the petitioner and his party; but it is a matter of great interest to both, that the rights of the stockholders and the freedom of election should be vindicated, and that persons in temporary power should not be permitted to use any improper or illegal means to retain their power. The President and his party have no more right to the management of the institution than any other stockholders who are qualified to be directors, and they are not to be permitted to make use of their power to deprive any one who may dislike, or oppose them, of any fair means of asserting his rights. The whole argument of the counsel for the defendants, has turned on technical grounds. They have not seen fit to meet the question of the legal and abstract right of the stockholder, at reasonable times, to inspect such books of the bank as will give him information of the persons who are his joint corporators; and I am satisfied, from their zeal and ability, that if the right could have been legally refused on its merits, no argument to that effect would have been omitted. In his essay on parties, Hume has said, that there is a class of men who are devotedly attached to the rights of property. These men are timid and submissive to power. There is another class who regard personal rights above all other rights, even that of life, who are bold and confident, and sometimes reckless and daring. Hampden, Pym, and Vane, in England; Adams, Patrick Henry, and Laurens, in our own country, were of this class. Without a good sprinkling of this class of men, there can be no civil liberty in any country. When we consider the condition of this community—the very large proportion of debtors, who, as Solomon says, are the slaves of their creditors, and that commercial men hold their existence at the nod of the money manufacturing power, we think that the efforts of the petitioner, who belongs to the commercial class, to vindicate by legal and moral means, his rights against the phalanx of power arrayed against him, are worthy of all commendation and approbation. The occasion calls for a strong expression of opinion, and it is no part of my character to withhold it. I do not court responsibility, but when imposed by duty, I do not shrink from it.

In conclusion, I am clearly of opinion that the petitioner, and

every other stockholder is entitled to access to, and inspection of the books called for; and that the President and Directors have acted illegally in refusing such access and inspection.

It is therefore considered that the peremptory exception pleaded in this case be overruled; that a mandamus issue, commanding the President, Directors, and Company, of the City Bank of New Orleans, and all their officers to permit Francis H. Hatch, and any other stockholder of said bank, at all reasonable times and places, to have access to, and inspection of the list of stockholders, the stock ledger and transfer book of the said bank; and that if the petitioner, or any stockholder is hindered or annoyed in the exercise of this right, he will be at liberty to apply to the court for relief by any other process which it has power to grant. It is further ordered, that the City Bank of New Orleans pay the costs of these proceedings.

*Eustis*, for the plaintiff. 1. A mandamus is the proper and only remedy, for the injury set forth by the complainant. Code of Prac. 789, 830, 831, *et seq*.

2. The writ prayed for is authorized in the case made out, on the general principles of law. *Vide*, opinion of judge Watts.

3. The party is entitled to an immediate hearing and relief. Code of Prac. 831.

*Micou* and *Grymes*, for the appellants.

The complainant asks a mandamus, to compel the bank to permit him to inspect the stock and other books at his pleasure. Has he such a right as a stockholder?

1st. The charter does not expressly confer the right. It prescribes what book may be exhibited, and how, and by whom its inspection may be demanded. Sec. 16. The same provision, and in the same words, is found in the charters of the Bank of Louisiana, sec. 19; of the Bank of Orleans, sec. 8; and of the State Bank of Louisiana, sec. 9.

2d. The members of a corporation have not, as a matter of course, such a right. The corporation is a distinct being from the members composing it. Civ. Code, art. 426. Its property is not the property of the individual stockholders. They are not tenants in common or partners. Ib., arts. 427, 429. The will of the majority expressed in the form provided by the charter, is the will of the company; and the acts of the majority through their constituted

officers and agents, are the acts of the corporation. Ib., art. 435.
Each member of the corporation is bound by its rules, when they
are not contrary to law. Ib., art. 436. As a member of the
association, he is governed not only by the established rules, but
when questions arise, respecting which there is no rule and no law,
he is governed by the will of the majority.

3d. The charter of the bank expressly delegates to a Board of
Directors, the control and management of its property, affairs, and
concerns. Sec. 3. The custody of the books, and the right to deter-
mine when and by whom they shall be inspected, is an important
part of the trust. If the books are open to every stockholder, the
Board of Directors ought not to be responsible for their custody.

4th. In conferring upon the Board the powers embraced in the
charter, the law has left it to the discretion of the Board, where the
books shall be inspected. This discretion will not be controlled by
the courts. Angel and Ames, 447.

5th. The directors, singly, have no greater rights than other
members of the company. The charter prescribes that they shall
act only by a quorum. The charter does not confer upon individual
directors any right, or impose any duty, different from those apper-
taining to other stockholders. The directors, singly, are not re-
garded either as officers, or agents of the bank *Louisiana State
Bank* v. *Senecal*, 13 La., 525. The directors of a bank are like
members of the Legislature, in office only while in session. The
right to inspect the books at his pleasure, does not belong either to a
member or a director.

6th. The complainant seems to have so considered it. At a ses-
sion of the Board, and as a member, he offered a resolution, that
any director might have access to the books. Here was a subject
on which they were competent to decide, submitted to their deci-
sion. They have by a large majority declared that they do not
consider it expedient to pass the resolution. Will the court sit in
appeal upon their decision?

7th. The right of a member of the corporation to demand the in-
spection of the books, so far as they contain evidence of his indivi-
dual rights, or so far as any entries contained in them, may affect his
private interest, is distinctly admitted. He may compel their pro
duction in court, as evidence of any fact at issue. But he cannot

demand that the books shall be always, and without restriction, thrown open to him.

8th. Not a single authority can be adduced in support of the pretensions of the complainant. The cases where the books have been ordered to be produced, are all cases where they were wanted for a distinct and definite purpose. Angel and Ames, pp. 441: and 408, citing 2 Starkie, 734, and both resting on the authority of the Mayor of Southampton, 8 Term Rep. The right of a corporator to inspect the books to see whether the affairs might not be better managed, and even on general allegations of mismanagement, has been expressly denied by the courts. 22 Com. Law Rep., 42.

A mandamus is not the proper remedy. It is a writ borrowed from the english law. It was there a high prerogative writ, introduced to prevent disorder from a failure of justice and a defect of police. Angel and Ames, 429. The applicant must show a complete and specific right. Ib., 444. There must be no reasonable doubt of the existence of the right, or the courts will not attempt to enforce it in this extraordinary manner.

The Code of Practice has not altered the english law; its provisions are almost identical with those of the system from which they were evidently borrowed. Arts. 829, 830, and 840. The Code has specified the cases in which a mandamus will lie to a corporation. It will lie to compel the corporation to receive a member entitled to the privileges of membership, or to restore a member unjustly deprived. It is not pretended that this application comes within either description. The complainant is not deprived of his membership. He is not forbidden to exercise the functions either of a stockholder or of a director. The case of *Lallande* v. *The Commissioners of the Louisiana State Insurance Company*, 9 La., 326, was a case under this article of the Code. The object of the application was, to compel the commissioners to receive the applicant as a member according to the law. The court did not expressly decide the question as to the propriety of the remedy, but admitted the existence of the right, and ordered the cause to be heard.

A mandamus will not lie where the party has another and specific remedy. If he is deprived of his privileges, he may sustain an action for damages. If he thinks himself unjustly pre-

vented from access to the books, he can bring his suit, demanding a decree that the books be submitted to him. Such a decree, if, after hearing both parties, the court should think him entitled to it, would be granted and enforced. The mere circumstance that an election may occur before, according to the forms of law a decision could be had, will not induce the courts to alter their mode of proceeding. Code of Prac. 831. In every case, it may be assumed that it would be highly convenient to the plaintiff to obtain the summary interposition of the courts; but if they were to attempt to meet the convenience of the suitors by altering the forms of proceeding, we would soon have no cases besides summary cases, and no process but a mandamus. A judgment in a suit would establish the right, if it exist, from the moment of the decree until the complainant ceased to be a share holder. 10 Johnson. 2 Barnwell and Ald.

The right demanded is not that of a member, but of a visitor; not of an equal with other members, but of a superior; not for purposes appertaining to private interest or to the duty of a director, but for purposes '*important to the interest of the public and of the institution.*' Blackstone, vol. 1, p. 480, speaking of the power of visitation, says, 'the law has provided proper persons to *visit, inquire into,* and *correct* all irregularities.' In England the King is the founder of a charity, and is its visitor. By what law is the complainant constituted, the visitor to inquire into and correct the irregularities of the City Bank? The charter of the bank makes the Legislature of the state the visitor of this corporation. The court will hardly permit the complainant to assume its functions. That the right claimed is that of a visitor, is apparent. The right to inquire into abuses would be futile, without the right to correct them; and the court will scarcely grant this high writ, merely for the gratification of an idle curiosity. The applicant should at least inform the court of the object of his demand. As he is not recognized as the exclusive guardian of the interests of the public or of the bank, he should explain to the court, how any right of his own as a shareholder or a director has been infringed.

But, admitting for a moment that the complainant has a clear right to inspect the books, will a mandamus lie? The right is

urged upon the ground that the books of the bank are the books
of the corporators, each of whom has a right to inspect them.  Be
it so.  The books of a commercial partnership are the property
of the partners; each member of the firm is seized and possessed
of them, *per my et per tout;* but would this court listen to an
application from one partner of a commercial firm, for a mandamus
to compel his co-partners to show him the books of the house?  He
might institute a suit to enforce his rights, and the books would be
.ordered to be brought in as evidence of them; but to attempt to
enforce them by a mandamus, would be ridiculous.

In conclusion, we must notice the form of the decree of the court
below.  It not only grants the prayer of the complainant, but
proceeds to adjudge, before any demand has been made, *' that all
other stockholders shall be admitted to the same rights.'*  It
goes further, and invites the complainant and other stockholders, in
case of resistance to the decree, or hinderance in the exercise of the
right, to come back to the court, and promises, in advance, that all
its powers shall be exerted to enforce the decree.

A court should never presume that its decrees will not be im-
plicitly obeyed.  A people accustomed to obey the laws, should not
be threatened beforehand with the consequences of anticipated
disobedience.  The idea that a refusal to obey is possible, ought
not to be suggested.  It detracts from the dignity of the court.  It
has an injurious effect upon the public mind.  It casts an unwar-
ranted reflection upon the party to the suit, against whom the
decree is directed.  The judge of the court below was misled by
his zeal.  He could not suppose that any disobedience or evasion
of his decree, was intended by the defendant.  He had no right,
and no reason to entertain such a supposition.  Where then was
the necessity of his promulgating to the world, and .recording upon
the minutes of the court, that the powers of his court would be
exerted to enforce its decree?  Are not the powers of the court
always exerted, to enforce all its decrees?  If such judgments pass
without notice, we may soon find judges entering of record, that
they will volunteer to head a posse comitatus and assist the sheriff
in the execution of their decrees.  It is due to the supremacy of
the law, it is necessary to preserve the decorum of the courts, that
such judicial quixotism, should be rebuked; and we trust that

whatever judgment this court may render upon the application, the form of the judgment below will be corrected, and the decree, stripped of its superfluities, will decide simply and purely upon the issue presented by the pleadings.

After this case had been argued, and while under consideration, an act of the Legislature was passed, which was approved on the 24th of February, and ordered to take effect from the time of its publication in the state gazette, which provided:

SEC. 1 That from and after the passage of this act, it shall be lawful for any stockholder or director of any bank, at any time during the business hours of the bank, to examine and take copies of or make lists from the stock ledger, or book containing lists of stockholders, and it shall be the duty of the President and Cashier of every bank, to allow such stockholders or director to make such examination or such lists, and any President, Cashier or other officer of a bank who shall violate the duties imposed by this section, and any director who shall vote for excluding any stockholder or director from the right of examination contemplated by this section, or if such exclusion shall have been already ordered by any Board of Directors, shall not within ten days after the promulgation of this act, unless prevented by illness or unavoidable accident, from attending the meetings of the Board, move and vote for a rescision of such order, or for granting such right, unless such motion should have been already made and said resolution rescinded, shall be liable to criminal prosecution, and on conviction, shall be punished by fine not less than one hundred dollars nor more than one thousand dollars, and by imprisonment not exceeding three months, or both, at the discretion of the court, and shall forever after be incapable of holding the office of director, president, or cashier in any bank.

GARLAND, J.* The petitioner alleges that he is a stockholder and director of the City Bank of New Orleans, a corporation established in the said city. That for purposes material to the interests of the institution, and of the public, he is desirous of examining the

* MORPHY, J., being interested, did not sit on the trial of this case.

stock ledger of said bank, or the book containing the list of stock-holders, and the transfer book, or book containing the transfers of the stock. He further states that he has made application to the President and Board of Directors to that effect, which application has been refused, and is still refused by them, and that all access to those, as well as to the other books of the said bank, has been and is refused to him. He therefore prays that after due proceedings had, and notice to the President of said bank, it be ordered that access to, and inspection of, the said books be afforded to him; and he also prays for general relief.

Upon these allegations and prayers, the judge of the Commercial Court issued an order addressed to the City Bank of New Orleans, commanding the President thereof, and all officers and servants of the said corporation to grant access to, and inspection of the stock ledger and transfer book of said bank to the petitioner, or to show cause to the contrary. In obedience to this order, a mandamus was issued, directed to the City Bank, its President, and all its officers, and servants, commanding them to grant access to and inspection of the books mentioned, to the petitioner, or to show cause to the contrary.

The bank, in its corporate name, appeared, and answered:

'That admitting, which the respondents by no means admit, all the allegations in said petition contained, the plaintiff, is not in law entitled to a writ of mandamus, wherefore respondents say that they are not bound to answer to said demand.'

The defendants then say, should the exception be overruled, that they deny all the allegations in the petition. It is further answered, 'that by the charter of the bank, the entire management of its affairs, and the control of its books and property, are confided to a Board of Directors, who administer the same by a majority, and have the right of deciding, when, by whom, and for what purpose, the said books shall be inspected, and that said petitioner has in law no right to demand the inspection at his pleasure of said books.'

For further answer, the respondents say, that by his petition, the complainant is attempting to put in controversy the right of the respondents to control the books of the bank by a majority of the directors, which right exceeds in value the sum of three hundred dollars.

On these pleadings, the parties went to trial. It is admitted that Hatch is a director and stockholder; that he applied to a clerk for the books mentioned in the petition, and was referred to the President, who said that he could not permit them to be examined, unless under an order of the Board of Directors; whereupon, on the 19th of January, 1842, the complainant offered at the Board the following resolution for adoption :

'*Resolved*, That it is the sense of this Board, that the stock ledger of this institution, is open to the inspection of any director of said bank.'

This resolution was rejected, by a vote of nine to two. It was further admitted that all the books of the bank necessary to enable any director to ascertain the state of its affairs, are placed on the table before the directors, on each discount day, viz, twice a week, and that at those periods every director has access to them for the purpose of examination ; but that the stock and transfer book, or list of stockholders, is never laid before the Board.

The judge overruled the exception, and ordered a mandamus to be issued, commanding the President, Directors, and Company of the City Bank, and all its officers to permit the complainant, *or any other stockholder* in said bank, at all reasonable times and places, to have access to, and inspection of the list of stockholders, the stock ledger, and transfer book ; declaring that if he, or any other stockholder, should be hindered or annoyed in the exercise of this right, he will be at liberty to apply to the court for relief by any other process, which it has power to grant. From this judgment the bank has appealed.

The act of the legislature, of the 3d of March, 1831, constitutes certain individuals, their associates, and successors, a body corporate, by the name of the City Bank of New Orleans, vesting it with all 'the powers, and rights given by law to private corporations.' Books were to be opened for subscription to the stock, under the direction of certain individuals. 'The property, affairs, and concerns of said corporation,' says the act of incorporation, ' shall be managed, and conducted by twelve directors,' elected by the stockholders annually. A book, in which the transfers of stock are to be entered, or registered, is directed to be kept; also, one in which all proceedings of the Board of Directors are to be recorded.

These are the only books mentioned in the charter. Any three stockholders, uniting in a call for the purpose, may within one month preceding the election of directors, examine the minute book; and the legislature, by a committee, or agents duly appointed, may at any time, examine into the affairs and books of said bank, and if necessary, call a meeting of the stockholders, to lay before them the result of the examination. The right of examining one book, is specially given for one month in the year, but that is not a privilege accorded to a single stockholder; at least three, must apply for it at one time. In relation to the transfer book, nothing is said about inspecting it. For their own government, and the conduct of the affairs of the bank, the directors are authorized to make such by-laws and regulations as to them shall seem proper, not inconsistent with the constitution of the United States, of the state, or the laws of either.

In conformity with the charter, the complainant was chosen a director. All the rights and privileges enjoyed by the directors, were enjoyed by him. But he wished to examine books which other directors were not permitted to look into, and it being refused, he endeavored to have a rule, or by-law, adopted, granting the right to all directors, but not to stockholders, of making such examinations. The proposition to make this rule having been rejected, the complainant asks the court, in effect, to establish such a regulation.

The exception taken by the defendants, presents the question, whether the complainant has any cause of action, that is, whether he presents such a claim or right, as can or should be enforced, or states any wrong which may be redressed, or the apprehension of any abuse or injury which can be corrected or prevented. It is therefore necessary to analyze the character of the complaint, and the remedy demanded.

The complainant says, that being a stockholder and director in the bank, he is desirous, for purposes material to the interests of the institution, and of the public, to see the list of stockholders, and the transfer book, both of which have been refused to him; he therefore asks the court to order that he have access to them; whereupon, process, called in legal language extraordinary, is issued; the usual forms of law are disregarded, and a preference given in the trial, over other suitors. The 15th article of the Code of Practice

Hatch *v.* The City Bank of New Orleans.

says, that ' an action can only be brought by one having a real and actual interest, which he pursues.' Whenever that interest arises, an action may be commenced ; a clear and concise statement of the nature and object of the demand must, however, be made, as well as of the nature of the title or cause of action ; and a prayer, analogous to the nature of the action to which the plaintiff has resorted, must conclude the petition. There must be some certainty in all demands, and they should be so stated, as to prevent a repetition of them, when once investigated and decided. The complainant does not allege in himself any right of property in the books in question. He asserts no personal interest in the examination he desires to make, further than as his own interests may be connected with that of the bank, and the public. He does not inform us of the extent of those interests, nor of their character. He does not allege that the interests of the Bank, or the public, are endangered, nor that he apprehends that his own will suffer in any manner ; nor is there any complaint that he is deprived of any right or privilege, enjoyed by any other director or stockholder. No mismanagement of the affairs entrusted to the Board of Directors is charged or insinuated, nor is any attempt made to show a single act calculated to affect the public interest ; and I should have been entirely ignorant of the object and purpose of this demand, if it had not been admitted by the counsel for the complainant, in the argument, that the main purpose was, to enable his client to operate with more success in an approaching election for directors of the bank. I am not, generally, disposed to be technical. As a matter of propriety among those interested in the bank, I think that the list of stockholders should be exhibited, whenever requested for any proper purpose, and if withheld to the injury of any one interested, I should, upon a proper representation, extend all the relief which the law affords; but I cannot, on the allegations of this petition, consent to prostitute the process of the court, to effect the objects avowed.

Suppose the complainant had alleged, that it was material to the interests of the bank and of the public, that he should examine the vaults of the institution, and the accounts of individuals, and that permission had been refused, and he had applied for a mandamus to obtain access for the purpose. Upon such an allegation, the merest novice in the profession would pronounce the application

one approaching to absurdity ; ye· an ingenious mind could suggest many plausible arguments connected with the security of the funds in the vaults, and of the debts owing the institution, to prove that both should be permitted.

The writ of mandamus, as introduced into our jurisprudence, seems to have been derived principally from the common law. Bacon says, that it is ' a writ commanding the execution of an act, where otherwise justice would be obstructed, or the king's charter neglected, issuing regularly, only in cases relating to the public and the government ; an l is therefore termed a prerogative writ.' 4 Bacon Ab., 497. It will not genera'ly be issued in a case, where a party has another legal remedy. Douglas, 526. In the case of *Rex* v. *The Bank of England*, an application was made for a mandamus, to compel the production of an account of the income and profits, to enable the next General Court, or meeting of stockholders, to consider of the state and condition of the bank, and to declare a dividend. Special facts were also set forth, and a direct violation of the by-laws charged. It was also made to appear that the GeneralCourt of the proprietors, were bound to make a dividend semi-annually. The complainant al. o showed, that he had applied to the General Court for an order to compel the directors to produce the accounts, and that they had refused to do so. The court of King's Bench unanimously refused the rule. Chief Justice Abbott said, ' no instance has been cited, in which the court has granted a mandamus to a corporation like the present, and I think we ought not now to establish the precedent.' Justice Bailey said, ' the court never grants this writ, except for public purposes, and to compel the performance of public duties. There is no instance in which the court have granted a mandamus to a trading corporation.' 2 Barnwell and Ald., 620.

The case of *Rex* v. *The Master and Wardens of the Merchant Tailors' Co.*, 2 Barnewall and Adolphus, 115, and 22 Engl. Com. LawRep.,40, is of more recent origin. A number of the corporators, who were dissatisfied with the management of the company, appointed a committee of their body, to examine into its affairs. They called upon the clerk, who refused to exhibit the books and papers of the company. Whereupon the corporation and the clerk were called upon, to show cause why a mandamus should not be granted, commanding

them to permit those individuals, their agents, and attorney, at all seasonable times, to inspect and take copies of all records, books, papers, and muniments belonging to the company, or relating to the affairs thereof. Affidavits alleging a *belief* of mis-appropriation of funds, violations of the charter, and other abuses, were presented, and the relators closed their application by saying, that they had no other wish, in desiring the inspection of-said charters, by-laws, and other documents, than to see, on behalf of a body of the members by whom they were authorized to act, how their joint funds were disbursed, and that the legal rights and privileges of the members of the company should be enjoyed by them, agreeably to their charters. Many objections were made to making this rule absolute; and, among others, the clerk of the company stated on oath, that he was informed, and believed, that the demand was prosecuted by a small minority of the members; that he was also informed, and believed, from the course pursued, that the application was not made *bona fide*, but in order to furnish the parties indirectly with materials, if possible, for disturbing the established constitution of the fraternity, and impugning the election of the governing officers. The court decided, that they would not, on the application of members of a corporate body, grant a mandamus to inspect the documents of the corporation, unless it should be shown that such inspection was necessary, with reference to some specific dispute or question pending, in which the parties applying are interested; and that the inspection will then be granted, only to such extent as may be necessary for the particular occasion. But that where members of a corporation, merely alleging grounds on which they believe that its affairs are improperly conducted, and that the officers have been unduly chosen, and complaining of mis-government in some particular instances, not affecting the parties themselves, nor any matter then in dispute, apply for a mandamus, to allow them to inspect, and take copies of all records, books, and muniments in the possession of the officers, belonging to the company, or relating to its-affairs, the rule will be discharged. Littledale, justice, in expressing his concurrence with chief justice Tenterden, said, ' the master and wardens who have the care of the documents in question, are bound to produce them, if a proper occasion-is made out, in a matter affecting the members of the corporation. But I think the mem-

bers have no right, on speculative grounds, to call for an examination of the books and muniments, in order to see if, by possibility, the company's affairs may be better administered, than they think they are at present. If they have any complaint to make, some suit should be instituted, some definite matter charged; and then the question will arise, whether or not the court will grant a mandamus.' Taunton, J., said, ' if the members of every corporation had a right, on mere speculative grounds, to call upon the governing part of the body, for an inspection of all records, books, and muniments belonging to it, the consequences would be endless confusion and inconvenience. It is necessary that there should be some particular matter in dispute between the members or between the corporation and individuals in it; there must be some controversy, some specific purpose, in respect of which the examination becomes necessary.' He proceeds further to say, that if in making the application, any purpose could have been pointed out, the parties showing that they had an interest in the matter in question, the rule might have been granted, and that the decision then made, would not prevent a remedy in future, if any grievance should be stated and shown. Patteson, J., said, the rule must be discharged, from the generality of its terms ; but he was far from saying, that there may not be instances, in which a corporator may apply for a mandamus to inspect documents of the kind mentioned, ' if he can show a specific ground of application, and that the granting of it is necessary to prevent his suffering injury, or to enable him to perform his duties.' But some tangible object must be stated.

This case is similar, in many of its features, to the one under consideration; and it appears to me, there is much good sense, as well as law, in the opinions of the judges. The judge of the Commercial Court says, that the decision is correct, but that it ' should have been placed on the ground of principle, not on the want of precedent.' Still he decides in contravention to it, principally, as I understand him, because the case required a long and tedious investigation, and the company was not a trading one, but a guild of trade and charitable corporation; and the one now before us presents a right, clear, simple, and easily recognized.

If a case be decided correctly, it is not material whether principle or precedent influences the court that makes the decision ; but

I know of no principle or precedent, that entitles one party to a remedy when his case is simple and easily decided, and deprives another of it, because the investigation of the right may be long and tedious. But the judge of the Commercial Court is entirely mistaken, in supposing that the case of *Rex* v. *The Merchant Tailors' Company* was decided on the grounds which he states, as a reference to the case and to the extracts which I have made from the opinions of the judges, will show.

The Supreme Court of the United States seem to have restricted the cases, in which a mandamus may issue, as much or more than the english tribunals. In the case of *Marbury* v. *Madison*, 1 Cranch, 137, it was held, that to render a manda nus the proper remedy, the officer, to whom it is directed, must be one, to whom, on legal principles, such a writ can be directed : and the person applying for it, must be without any other specific and legal remedy. So in a case against the Post Master General, it is said, that the right claimed must be just, and established by positive law ; the duty, required to be performed, clear and specific ; and no other adequate remedy exist. 12 Peters, 524.

In New York, the principles which govern the english courts, have been acted on ; and a mandamus will not be allowed where the party has an adequate remedy at law. 10 Johnson, 495. In 10 Wendell, 396, the court said, 'the proposition is universally true, that the writ of mandamus will not lie in any case, where another legal remedy exists, and it is used only to prevent a failure of justice.' See also, 1 Cowen, 502. 2 Ib., 444. In 2 Cowen, 479, the court said, this writ should be exercised very sparingly, only in extreme cases, and where the right is clear. In 12 Wendell, 183, is a case, where a portion of the directors of a bank passed a resolution excluding one of their number from an examination of the di count book, to which all the rest had access, on the ground that he was hostile to the institution, and would use the information to its injury. The court very properly held, that a mandamus would lie, and that it was the proper remedy, as the party was excluded from a portion of the privileges to which each director was entitled, and enjoyed by all except the complainant ; and further, that it was proper he should examine the book, to enable him to

perform his duties as a director, and to inform himself of what his co-directors had been doing in his absence.

If such a case, as the last mentioned, were presented, I should not hesitate to issue a mandamus.

In many other cases in our sister states, the principle is asserted, that a mandamus will in general only issue, when a party has a right to have a thing done, and has no other specific means of compelling its performance. There must therefore be a right without an adequate remedy, which right ought to be complete and perfect, and it should be shown, that a refusal, or great delay would cause injury to the relator or complainant. 1 Wendell, 318. 2 Cowen, 444. 2 Binney, 362. 3 Ib., 275. 5 Ib., 87.

The Code of Practice, article 789, says, that ' courts of justice may, in certain cases hereafter provided, direct orders to individuals or corporations, to compel them to perform certain duties prescribed for them by law, or to prevent them from usurping powers, which do not belong to them.' Let us now see, what are the certain cases, in which the writ of mandamus may be issued to corporations. It may, by the 829th article, be issued to a corporation ' directing it to perform some certain act, belonging to the place, duty, or quality, with which it is clothed ;' and article 835 says, that it may be directed to such corporations, ' to compel them to make elections, and perform the other duties required by their charters.' Now what are the duties required by the charter of the City Bank. To enumerate them, would require a repetition of the charter ; but after a most minute examination, I cannot find that the bank is required, as before stated, to keep but two books, viz., the transfer book, and the minutes of the proceedings of the Board of Directors. The latter is only open to the inspection of the stockholders for one month in the year, and about the exhibition of the former, the charter is silent. Its production, as well as that of the other books, kept in conformity to the by-laws, is therefore to be regulated by general principles.

I do not agree with the counsel for the defendants, that the Code of Practice has restrained the powers of the courts of this state in issuing this writ, more than the common law does. On the contrary, it seems to me that extensive powers are given ; so much so, that great discretion should be used in exercising them. It may be

issued in a case, where a party has other means of relief, if the slowness of ordinary legal forms is likely to produce great delay, and defeat the ends of justice, as well as in cases, where there is no other specific remedy. Code of Prac., arts. 830, 831. It may be issued, to compel a corporation to perform any specific duty required by its charter. Code of Prac., art. 835. Therefore when an application is made for the writ, the duty required to be executed or performed, must be stated, that the court may see whether it is required or authorized by the charter, or. necessarily results from it ; and it must be stated, that the party has been injured, or apprehends injury, or has been deprived of some legal right.

This view of the case is in accordance with our established practice and decisions. 6 La., 77. In 2 La., 63, is a case, where two executions were issued on a judgment at the same time, one being sent to one parish, and one to another. An injunction was obtained, and this court dissolved it, on the ground that no damage had been shown, as one execution only was proved to have been levied. The present presiding judge, in pronouncing the opinion of the court, said, ‘ it is not enough to obtain an injunction to show irregularity ; injury to the applicant, or apprehension of it, can alone authorize a resort to this extraordinary relief.’ In 14 La., 280, the same principle was re-iterated. The court said, ‘ it is not enough to obtain an injunction, to show an abstract irregularity. Injury to the applicant, or at least some apprehension of it, can alone justify a resort to this extraordinary remedy.’ Here is the same principle laid down, in almost the same words. If it be true, and I think it is, that injury, or the apprehension of it, is necessary to be alleged and shown, to sustain an application for an injunction, a fortiori something of the same kind should be made to appear, to obtain the still more extraordinary process of mandamus.

The judge of the Commercial Court, in his opinion, and the counsel for the plaintiff in the argument, rely strongly upon the case of Lallande v. The Directors of the Louisiana State Insurance Company, 9 La., 326. That case is very different from this, and goes strongly to sustain the ground I assume. The petition in that case charged fraud, and a violation of the charter, for the purpose of depriving the petitioner of his legal rights, whereby he sustained

serious injury. These allegations were sustained, and the court properly ordered a mandamus to be issued.

The judge *a quo* says, that it is not necessary to make any assignment of motive or reasons, because a party has, in such a case as this, naked and abstract rights, for the exercise of which he is not bound to assign any reason. That the plaintiff may have naked and abstract rights, is a matter I shall not now controvert; and so long as he can exercise them himself, I shall not deny his right to do so, without the assignment of any motive or reason. But when he appeals to the tribunals of justice to assist him, then his rights must be investigated, and sufficient reasons shown, before process will be awarded. I have looked into a good many treatises on jurisprudence, and examined the statutory provisions of our state, without being able to ascertain, what those naked and abstract rights are, which the plaintiff can exercise of his own volition. If they be natural or imperfect rights, then they will stand in the same category with natural or imperfect obligations, and create no right of action. If these abstract rights be civil, they can only be enforced as other legal obligations.

It has been urged, that the books of a corporation are evidence of the acts and proceedings of the corporate body, and, with respect to the corporators, are public; that they are common evidence, and that each individual, possessing a legal interest in them, has a right to inspect and use them as evidence of his rights. *Angel on Corporations,* 406, 408. I have no doubt of the correctness of this doctrine; but the author who asserts it, also says, pp. 428–441, that a mandamus will not be issued to compel the custos of corporate documents, to allow an inspection, or copies to be taken, unless a clear right is shown, and some just or useful purpose is to be effected. No just or useful object has been alleged, or proved in this case. It is not shown, in what way the interests of the bank, or the public are to be promoted by the complainant's inspecting the books mentioned, so that we can judge of their sufficiency.

In coming to a conclusion, I have not looked beyond the record, nor assumed any thing as a fact, which does not appear. I have stated all the pleadings and evidence in detail. Upon them my opinion is formed, and I do not feel authorized to go further, either for reasons, or to impute motives, nor can I speculate upon the po-

litical considerations and arguments, which constitute so large a portion of the opinion of the inferior tribunal.

It has been said, that it is important that the complainant should examine the list of stockholders, that he may know, who are his associates in the corporation, and who are authorized to vote for directors, or qualified to act as such. He does not allege, that he is unacquainted with the stockholders of the bank, nor that his own interests, those of the institution, or of the public, would be advanced by his knowing the stockholders, and ascertaining who are qualified to vote, or to act as directors. · It is fair to presume that the complainant, who is a director, knows his constituents; and the judge of the Commercial Court tells us, that ' a knowledge of the stockholders can generally be obtained at the period of an election.' If this be so, the complainant can sustain no serious injury by waiting until that time, as he cannot exercise his right as a voter before.

It also seems to me, that the actual rights of the complainant to the estate and property of the corporation, are not definitely understood. Article 427 of the Code says, that the estate and rights of a corporation belong entirely to the body, and that no individual corporator can dispose of any of them, and that they are very different from a thing, which is common to several individuals. If therefore the claims of the complainant were recognized to the extent set up, it might deprive the property of the character given to it by law, and make it common.

I am therefore of opinion, that the judgment of the Commercial Court should be reversed, and the rule be discharged with costs.

Bullard, J. I have carefully considered the opinion prepared and just pronounced by judge Garland, and concur with him. It appears to me that the complainant has not shown himself entitled to the extraordinary remedy which he seeks, even admitting his right to have access at all reasonable times to the stock book or ledger.

Martin, J. This is the first melancholy instance in which this court has pronounced a judgment, in which the majority of its members do not concur; and I fervently pray that it may be the last. It is my misfortune to dissent from the opinion of two of my colleagues, and as this circumstance renders it extremely probable that I labor under an error, I will detail more minutely than I am

accustomed to do, the considerations which have led me to the conclusion at which I have arrived, that it may at least appear I have given to the case all the attention of which I am capable.

The bank is appellant from a judgment making absolute a rule to show cause why a mandamus should not be issued, commanding the President, Directors and Company, and all their officers, to permit the plaintiff and any other stockholder of said bank, at all reasonable times and places, to have access to, and inspection of the list of stockholders, the stock ledger, and transfer book.

The facts of the case are these : The legislature, by a provision in the charter, has directed the annual election of directors to be holden on the first Mondays of March. Towards the middle of January last, the appellee, a director, and consequently a stockholder, applied to the clerk in whose possession were the list of stockholders, transfer book, and stock ledger, for the inspection of the said list and books, and was referred to the President, who said that he could not permit the inspection, unless under an order of the Board ; whereupon, at its next meeting, the appellee proposed a resolution, declaring the sense of the Board to be, 'that the stock ledger of this institution is open to the inspection of any director.' The resolution was rejected, having been supported by the appellee and one other director only. On this, the rule to show cause was obtained. The appellants showed for cause, that, admitting the allegations of the plaintiff to be true, which they denied, he was not entitled to the mandamus, and they were not bound to answer; adding, that if the exception should be overruled, they denied the allegations of, and the right claimed by, the relator.

I have considered the case under three points of view.

1st. Whether a director has a right of access to, and inspection of, the stock list, stock ledger, and transfer book ?

2d. If this right exist and be denied, or obstructed, whether a mandamus be the proper remedy ?

3d. Whether the petition contains such matters and allegations as will enable the court to extend its aid, or whether it be so deficient in these respects that the application should be dismissed ?

I. During the short period which has intervened between the judgment appealed from and ours, the legislature has passed a law entitled ' An act supplementary to an act, entitled an act to prevent

further violations of law by the banks,' which doubles my task in the examination of the first proposition, because it will be important to see what the law was when the judge *a quo* pronounced his opinion, and what it is now ; for where the law is changed after the rendering of a judgment, but before the action of the appellate court thereon, its fate in this court must be determined by the new law. *State* v. *Johnson et al.* 12 La. 547. *Atchafalaya Bank* v. *Dawson,* 13 Ib. 497. I am to examine the case under both laws, because the relief under the last act of the legislature, although more extensive than that under the. former, as to certain particulars, is less so with regard to others.

The charter requires that the directors shall possess certain qualifications, to wit : that they shall own a definite number of shares, and be citizens of this state ; they must besides have holden the required number of shares, during a stated period anterior to the election. The votes of the electors or stockholders, are graduated by a scale according to the number of shares owned by each of them, during a period, fixed by the charter, previous to the election. Every director and stockholder has an unquestionble right to the inspection of the list of stockholders, transfer book, and stock ledger, because such inspection is necessary for the protection of his rights, and to aid him in the discharge of his duties ; amongst the most important of which, is the choice of proper persons as directors. The electors have no other means of knowing the persons eligible or entitled to vote, and the number of votes each is qualified to give, but by a recourse to the books called for by the appellee. It is important that he should know who are his co-corporators, in order to consult and deliberate with them on the formation of a proper ticket, and to combine his efforts with theirs for its support.

The governor nominates, and, with the consent of the senate, appoints, six of the directors of the Bank of Louisiana, each of whom must be the owner of thirty shares of the stock. The same number of directors of the Citizens' Bank, are appointed by the joint ballot of both houses of the legislature. There can be no doubt but that the governor or the legislature may require the inspection of the list of stockholders, transfer book, and stock ledger of those banks, in order to acquire the information essential

to a proper selection. The stock list is a balance sheet from the · stock ledger; the transfer book exhibits the period of each respective transfer; and the stock ledger contains an account of the changes of the stock of each corporator. It is difficult to conceive for whose use these books are kept, if the directors and stockholders are not permitted to examine them. Every individual stockholder has the same right of inspection as the governor or legislature, as he has the same duty to perform.

The first judge, in my opinion, did not err in coming to the conclusion under the law, as it then stood, that a director and stockholder of a bank, had a right of access to and inspection of the stock list, stock ledger, and transfer book. The recent act of the legislature has placed this right beyond any possible doubt. It provides 'that it shall be the duty of the presidents and cashiers of banks to exhibit the stock list to the stockholders at any time during business hours, and their refusal is made a penal offence, and a disqualification of those who refuse to act in those capacities.' I see nothing in this law which impinges on the rights or charters of these corporations, and look upon it as one of those general rules or regulations relative to this, or any other class of corporations, which may be enacted, altered, or amended at the pleasure of the legislature. This act strengthens the claim of the plaintiff on the first proposition.

II. The second is, whether, when the right of the plaintiff is proved, and the exercise of it denied or obstructed, he may seek relief by a writ of mandamus? This writ, or the order of a court directed to a corporation, officer, or individual, to enforce the performance of a given act, is common to the jurisprudence of every civilized nation, ancient or modern. The courts of this state are not, so far as my knowledge goes, authorized or restrained in the use of it by any principle of the common law of England, by any act of the British Parliament, or by any statute or decision of the courts of any other state in the Union. They received it, on the establishment of a government under the authority of the United States, from the jurisprudence of Spain, which has since been explained by statutory provisions, and the decisions of this court. The Code of Practice, art. 829, gives us the definition of this writ. 'It is an order issued in the name of the state, by a tribunal of

Hatch *v.* The City Bank of New Orleans.

competent jurisdiction, and addressed to an individual, or corporation, or court of inferior jurisdiction, directing it to perform some certain act belonging to the place, duty, or quality with which it is clothed.' In article 830, the Code states, that 'the object of this order is to prevent a denial of justice, or the consequence of defective police; and it should therefore be issued in all cases where the law has assigned no relief by the ordinary means, and where justice and reason require that some mode should exist of redressing a wrong, or an abuse, of any nature whatever.' It however may be issued at the discretion of the judge, even where a party has other means of relief, if the slowness of the ordinary legal forms is likely to produce such a delay, that the public good and the administration of justice will suffer from it. Art. 831. It may be directed to all corporations established by law. Art. 835.

1st. To compel them to make elections, and perform the other duties required by their charter.

2d. To compel them to receive, or restore to their functions, such of their members as they shall have refused to receive although legally chosen, or whom they shall have removed without sufficient cause.

The mode of applying for this writ is pointed out in art. 840. 'The party wishing to obtain an order, in any of the cases mentioned in this paragraph, must apply to any competent tribunal, by petition, stating the nature of his right, or of the injury he sustains, or of the denial of justice which he experiences, and shall make oath of the truth of the facts thus alleged.'

The appellee was entitled to a mandamus, under art. 830 of the Code. His object was to remedy a denial of justice, and the consequence of a defective police. The appellants' counsel has contended that the mandamus ought to be refused, because his case was one in which the law has assigned another remedy, to wit, an action in damages. There is not any difference, in my opinion, between a case in which no remedy is provided, and that in which the remedy is absolutely useless or extremely inadequate. The right claimed is of such a nature, that to be of any value, it must be promptly enforced. It is not susceptible of any, but the most capricious measure of damages. The slowness of legal forms, if any other remedy than the writ of mandamus were resorted to, is

such, that the public good would suffer from the delay. The provisions of our law, in this respect, are in accordance with those of the common law, which the counsel for the appellants has invoked. It is laid down by Lord Mansfield, that in order to exclude the writ of mandamus, remedy by other means must be adequate, or must afford specific, or what in the case is equivalent to specific relief. *Rex* v. *The Bank of England*, Doug., 526. Damages cannot be said to be specific relief, for the refusal of leave to inspect books. The sentiments of his lordship were echoed on this side of the Atlantic, by Chief Justice Savage, of New York, in the case of *The People* v. *Throop*, 12 Wendell, 183. This gentleman there says, ' it must be conceded that if the relator has a right to the inspection of the books of the bank, a mandamus is the appropriate, and the only remedy at law. The cases cited by counsel show, that in case of removal, or suspension from corporate rights, a mandamus is the proper remedy. No action at law lies in such a case, under its present circumstances. Whether an action might not be maintained in case actual individual damage should be the consequence of the conduct of the defendant, and his co-directors, is a question not presented ; and if such an action would lie, that would be no objection to a mandamus, in the present state of the case. If there is a right on the part of the relator to examine the books, either with reference to his own safety, or with a view to the proper execution of the trust reposed in him by the stockholders, then this is the remedy, and the only remedy in a court of law.' In most of the cases, cited at the bar, in which the mandamus was refused, the application for the writ was preliminary to ulterior proceedings. Those proceedings must have been in chancery, or on a separate trial of a suit at law, and in the course of them the chancellor could have ordered the production of the books. The inspection was wanted with a view to reform the course of management of the directors of the institution, and consequently involved a complicated, minute, and tedious investigation, which it was impossible to carry on, as a summary proceeding, in a court of law. The right claimed by the appellee is distinct and specific, and requires an investigation only of two facts, to wit, whether he be a stockholder, and whether the right be denied ; facts which involve no tedious investigations. On authority, therefore, as well as on principle, I cannot imagine a

case in which the remedy of a mandamus is more appropriate, and I would say exclusively so, than the present one; and I cannot think it any *prostitution* of this remedy to grant it, when so apposite to the case of one of the people, whose prerogative it is to demand it.

III. We come now to the third point of view under which this case is to be considered, to wit, whether the petition contains sufficient matter and allegations for the court to act upon, or whether the exception of the defendants was properly overruled? On this point, the Code of Practice is, for me, a sufficient guide. It requires that the petition should contain a clear and concise statement of the object of the demand, as well as of the nature of the title, or the cause of action on which it is founded. It must end by conclusions analogous to the nature of the action to which the plaintiff has resorted. Art. 172, secs. 3, and 5. This is the rule in ordinary cases. In that of the writ of mandamus, the Code has however made a distinct, and special provision, in art. 840, already cited in the examination of the second proposition. The party must state, ' the nature of his right, or of the injury he sustains, or of the denial of justice which he experiences.' If these provisions of our Code have been complied with, I cannot comprehend how the counsel for the appellants expect to sustain their exception to the sufficiency of the plaintiff's application, on the ground that in some english cases, the courts of that country have required, in their language, something more tangible. The petition states that, ' the plaintiff is a director and stockholder; that for purposes material to the interests of the institution and of the public, he is desirous of examining the stock ledger, or book containing the list of stockholders, and also the transfer book, and that he has made application to the President and Board of Directors therefor, which has been, and still is refused to him ; and all access to those, as well as to the other books of the bank, has been, and still is denied him.'

In general cases, the Code requires a clear and concise statement of the object of the demand. I find in the petition, that purposes material to the interests of the institution, and of the public, are the object or motive of the demand. A statement of the nature of the title of the applicant is next required ; and this results from the station which the petitioner alleges he occupies, and which legally

gives him a right to the inspection he seeks. The cause of action required to be stated, is the refusal of the officers of the bank to suffer the exercise of the plaintiff's right. The requisites of the Code in petitions in ordinary actions, are therefore strictly complied with. In petitions for a mandamus, the party is to state 'the nature of his right, or of the injury he sustains, or of the denial of justice which he experiences.' It would have been sufficient to have stated either of these three requisites; for the Code enumerates them disjunctively. I find them, however, all stated. The right is asserted; the injury, is the obstruction of its exercise, or in other words, a denial of justice.

The exception is, that 'admitting all the allegations in the petition, the party is not entitled to a mandamus.' This exception is of the most general nature, and does not call for or point out the want of any specific allegations. Under an exception of this kind, every intendment is to be made, and every inference assumed which can fairly be drawn. The petitioner alleged that he desired the inspection, for purposes material to the interests of the institution, and of the public. This petition was filed on the 19th day of January, and the record shows that the election of directors was to have taken place on the 7th of March following. It certainly is a purpose of material, nay, of vital importance to the public and to the institution, that there should be a well selected Board of Directors, which is most likely to be obtained by a free and open election. It may, therefore, be well intended, that this was one of the purposes for which he desired such inspection. In the case of *The People* v. *Throop*, already cited, the affidavit, which, in the state of New York, is, like the petition in this, the basis on which the writ of mandamus rests, stated only that the relator was a director of the bank, and that the cashier had refused to permit him to inspect and examine the discount book; and no objection was made to the affidavit in that very contested case; but the bank relied on an offer of proof that the relator wanted the writ merely for purposes hostile to the institution. The court disregarded this, and looked only to the naked right of the relator. As a general rule, no man is bound to give a reason for demanding his right. If a suitor demand a tract of land, a house, a horse, or a sum of money, it is not necessary for him to say that he wants the land to cultivate, the

house to inhabit, or rent out, the horse to make a journey, or to put in the plough, or the money to buy food and clothes, or lend at interest; and if he were so idle as to assign any of these reasons, no issue could be raised on a denial. So, if a suitor state that he has a right of way, or is a visitor of a literary or eleemosynary institution, he need not allege in the first case, that he wants the right of way, to send to the mill, to the market, or to go to church; nor in the second, that he suspects abuses. It is enough to assert the existence of his right, and its obstruction. This is the rule in ordinary cases, and there is no difference between them, and that of a mandamus, called for on account of the obstruction of a plain and substantive right. A man illegally kept out of office, is not bound to state the motives which induce him to seek relief. In cases where the right to a mandamus is not evident, and the grant of it purely discretionary, it is expedient, and perhaps proper, that the party should state some sufficient reasons; this is done on an affidavit, but it is doubtful whether they could be traversed, and an issue raised thereon. In the present case, the right is evident; reasonable motives are manifest; the exception is of the most general nature; and every intendment can be made to support the petition. The application is to the justice, not to the discretion of the court.

The petition contains an express averment that 'all access to the books before mentioned, as well as to the other books of the bank, has been refused.' The affidavit annexed to the petition, extends to this averment. In our enquiry with regard to the sufficiency of the petition, and the fitness of the defendants' exception, we must assume that the plaintiff was prevented from examining any of the books of the bank. If this be assumed, there can be no ground for sustaining the exception. It is extremely doubtful indeed, whether a director may be excluded from the inspection, and examination of any book of the bank, even by a by-law of the corporation. The defendants' counsel contend that he may, and the answer avers, 'that by their charter, the entire management of the affairs of the bank, and *the control of its books* and property, are confided to a Board of Directors, who have the right of deciding, when, by whom, and for what purpose the said books shall be inspected.' The third section of the charter provides, ' that the pro-

perty, affairs, and concerns of the corporation shall be managed and conducted by twelve directors.' I have looked in vain in the charter, for any provision, under which the control of the books, in the manner urged, is granted. Pretensions similar to those of the appellants in this respect, were advanced in the case of *The People* v. *Throop*, already cited, and were rejected. I cannot give more cogent reasons, or use more forcible expressions, than those of Chief Justice Savage, in that case : ' The question then seems to be this, has every director of a bank a right to know the transactions of his co-directors, in relation to the management of the institution ? The statement of the question furnishes the answer. What right has the president, or any other director, to demand information as to the affairs of the institution, which the relator has not? The thirteen directors were elected by the same stockholders, at the same election, to hold for the same term, clothed with the same powers, invested with the same trusts, each to exercise his best judgment in the management of the affairs of the company. Suppose a difference of opinion exists among the directors, a majority must control; but if they are divided, say six against seven, is it competent for the majority to turn the minority out of the directors' room, and refuse them any information of the business transactions of the bank ? Surely such an outrage could not be defended ; nor can I conceive any plausible apology for it. The directors, thus virtually rejected from office, might be the principal stockholders in the bank, and the majority might have little interest therein, or might be hostile to the best interests of the institution. These are possibilities, but have little or nothing to do with the question of right. Every director has an equal right in regard to this matter.'

By an act of the legislature of the state of New York, directors of banks are made liable for certain violations of duty, and it is provided that 'every director not present at a meeting when certain violations shall happen, shall be deemed to have concurred therein, if the facts appear on the books of the company, and he shall remain a director for six months, and shall not require his written dissent to be entered on the minutes of the directors.' After referring to this law, Chief Justice Savage asks, 'how can a director know what was done when he was not present, unless he can have access to the books which disclose what was done ? The statutes do not se-

cure, in terms, to every director the right to examine the books; but by the section last quoted, and those preceding it, he may be made liable civilly and criminally for the improper conduct of his co-directors, and unless he can have the means of knowing what has been done, he cannot avoid such liability. What would be said of a legislative body, which should refuse to a member the knowledge of its proceedings which occurred while he was absent, or a perusal of its journals? This case is not entirely analogous; but it is sufficiently so, to show the character of the high handed measure adopted by the Board of Directors.'

 Our statute book contains no provision similar to that of the law of New York, in regard to the responsibility of directors for the acts of the Board during their absence. In the case of *Percy et al.* v. *Millaudon et al.*, 3 La. 575, the court held, that 'every director present at a Board, is responsible for any act of it, for which he votes, or which he does not oppose, and in the latter case, for all the injurious consequences of the act, which he does not fairly labor to avert.' 'Every absent director is equally responsible, in case of extreme neglect in his attendance at the Board, or in case, after the act comes, or must have come to his knowledge, had he used due diligence, he does not labor to avert its injurious consequence.'

The law of this state, in this respect, as it is understood by this court, is so similar to that of New York, that the consequences which Chief Justice Savage draws from the latter, legitimately result from the former. The responsibility under which a director labors, must necessarily include the ability of doing every act which is necessary to avert the consequences resulting from the responsibility, *id est*, to take cognizance of every thing that is done in the management of the affairs, with the supervision of which he is entrusted. The charter commits to twelve directors the management and conduct of the property, affairs, and concerns of the bank. The trust is to every director, and not more particularly to any one than to another. How then can it be said that a director may be excluded from the knowledge of any part of the affairs or concerns, which he is to manage and conduct. They are all equally responsible, and must have equal powers.

I conclude that the first judge did not err in overruling the de-

fendants' exception; that the right of the plaintiff exists; that the writ of mandamus is his remedy; and that his petition contains all the allegations required by the Code. On the merits, the record shows that the plaintiff is a director and stockholder; that he applied for leave to examine the list of stockholders, transfer book, and stock ledger, and was refused. There is no evidence of his having asked, and much less of his having been refused access to any other book.

It is at all times desirable that important questions should be settled according to their merits, and not evaded on mere technical grounds. In the examination of this case, I have been struck with the injury that would result to the community, if the conduct of the appellants received the least countenance from this court. I have not therefore, thumbed english law books, in search of any of the technicalities of the common law which might prevent the examination of the case on its merits; yet I have listened with patience and with pleasure to the able argument of the counsel for the appellants, in support of their exception to the sufficiency of the petition. Their efforts have appeared commendable, and they have gained much credit with me by abstaining from any argument in support of the conduct of their clients.

The stockholders of the bank, and the community in general, will certainly bestow applause on the efforts of the plaintiff in exposing to the world the unjustifiable conduct of the appellants. Charity will always endeavor to find in acts which public opinion condemns, some grounds on which they may be excused or extenuated. I have taxed my ingenuity in search of such, in the present case. I had hoped that the counsel for the appellants, would have presented some. Their talents and their zeal had fostered this hope. Their silence on this part of the case, has confirmed the conclusion to which its examination has led me, to wit, that the conduct of their clients is indefensible.

I had at first some doubt on that part of the decree which allows the benefit of the mandamus to any stockholder, although the petition is not alleged to be filed for the benefit of the other stockholders, and there is no prayer to that effect. It is a well settled rule, that where a litigation takes place in relation to a right which is common to many persons, any individual may sue for the benefit

of himself, and of others having a like interest, notwithstanding such persons are not named; and that such persons are bound by the result of the litigation, although their consent has neither been asked nor given. In Story's Equity Reps. p. 120, *et seq.*, the general principle, and cases under it are stated. In p. 121, a case is given, where a decree between a lord of a manor and some of the tenants, is declared to be binding on all of them. So a decree between a parson and some of his parishioners as to a modus, has been held binding on all the parishioners. This rule applies where there has been a fair contest on the rights of the parties. It is very certain that if the plaintiff had asserted the right of inspection for himself and all the other stockholders, without their consent asked or given, or in spite of their dissent, the suit being supposed not collusive, the decree would bind the rights of all parties. If the decree rendered in favor of the lord of the manor, or of the parson against some of the tenants and parishioners, binds them all, there can be no reason, but one of a purely technical character, why a decree between one stockholder of a trading company, asserting a right which is purely common to him with all the other stockholders, and the corporate body, should not be held binding as between every stockholder and the corporate body. If any other stockholder wished to avail himself of the decree, it would only be necessary for him to allege the fact of such decree, that he was a stockholder, and that the right was refused to him; and if these two last facts were sworn to, the peremptory mandamus might issue in the first instance. In extending, therefore, the benefit of the decree to any stockholder, the court only embodied in its judgment a general rule, principle, or corollary, which followed from the establishment of the main proposition; and this rule applies with peculiar force in this case, inasmuch as the rights of one stockholder, in relation to the right claimed, can in no manner vary from the rights of any other stockholder. The observation of Lord Chancellor Cottenham, in the case of *Taylor* and *Johnson*, as cited in Story's Equity Rep. p. 767, has its proper application in this case, to wit: that 'it is the duty of every court of equity to adopt its practice and course of proceeding, as far as possible, to the existing state of society, and to apply its jurisdiction to all new cases which, from the progress daily making in the affairs of men,

must continually arise, and not, from too strict an adherence to rules established under very different circumstances, to decline to administer justice, and to enforce rights for which there is no other remedy.'

The extension of the decree, therefore, to any other stockholder, neither helps nor hurts. The court below only took the pains to instruct the parties as to the legal effect of the decision in the case, viz: that if Hatch, as a stockholder, had a right to the inspection required by him, every other stockholder had the same right; and the present dispute about the matter, proves that the judge was right in thinking the latter necessary. The legislature in the late act which I have cited, has manifested its concurrence with this part of the judgment under consideration, and I have no inclination to express a dissent from it. I conclude, that this court ought. to affirm the judgment.

It is, nevertheless, ordered that the judgment of the Commercial Court be reversed, and that the rule to show cause, &c., obtained against the defendants be discharged; the plaintiff paying the costs in both courts.

